(118 App. Div. 227)

### BLEWETT et al. v. HOYT et al.

(Supreme Court, Appellate Division, First Department. March 15, 1907.)

1. BONDS—CONSTRUCTION—EXTENT OF LIABILITY—MINES AND MINERALS.

Purchasers of an interest in mining property for $175,000 agreed to pay $175,000 more as they should receive net earnings, either in association with the vendor or through a corporation succeeding to the ownership, and agreed that within a specified time they would commence to develop the property with a force of 10 men until the $175,000 should be paid. A bond for $175,000 was given by the purchasers to secure the performance of the contract, providing that, if they should cease work for causes other than injunction, the balance due should bear interest out of the net earnings, and so long as the interest should be paid the bond should not be forfeited, but, in case of a forfeiture, the vendor should be deemed damaged in a sum equal to the balance due, and that the purchasers might reconvey the property, which conveyance should be full satisfaction of the penalty incurred. *Held*, that the bond created an obligation to pay $175,000 only if that sum was received out of net earnings, and to do certain things with respect to working the mines designed to insure the earnings and dividends and their application to the payment of $175,000, and that that sum was a penalty, leaving plaintiff to recover only so much damages as were shown to have resulted from a breach of the agreement, recoverable on proof that, if the mines had been worked, the purchasers would have been able to earn the $175,000, or some part thereof.

2. SAME—EFFECT OF ASSIGNMENT.

The assignment of the purchasers' interest to a corporation had no effect on their obligation, since the bond bound them or their assigns to perform the obligation; the purchasers becoming in effect sureties for their assigns.

3. JUDGMENT—SEVERAL PARTIES—DEFECT.

Where purchasers of mining property gave the vendor a bond to develop the property to create net profits to pay the balance of the purchase price, and, the vendor having assigned an interest in the bond to plaintiffs and H., plaintiffs sued for an alleged breach, but H., refusing to join, was made a defendant, and answered, demanding no affirmative relief against the purchaser sued as an obligor on the bond, no copy of the answer being

served upon such purchaser, it was error to award judgment for plaintiffs and H. against the purchaser, since, there being no evidence as to the extent of H. and plaintiff's respective interests, and H. being not entitled to judgment, there was no basis for a judgment for plaintiffs.

Appeal from Trial Term.

Action by Edward Blewett and others against Colgate Hoyt and Leigh Hunt. From a judgment for plaintiffs and defendant Hunt, defendant Hoyt appeals. Reversed, and new trial ordered.

See 101 N. Y. Supp. 1086.

Argued before PATTERSON, P. J., and McLAUGHLIN, INGRAHAM, CLARKE, and SCOTT, JJ.

John G. Milburn, for appellant Colgate Hoyt.
George F. Harriman and Andrew F. Burleigh, for respondents.
J. Markham Marshall, for respondent Leigh Hunt.

INGRAHAM, J. On the 28th day of November, 1891, an agreement was made wherein one H. G. Bond was party of the first part and Charles L. Colby and Colgate Hoyt were parties of the second part. By that agreement Bond agreed to sell to the parties of the second part, or their assigns, for the sum of $350,000, of which $50,000 had been paid to the party of the first part, an undivided two-thirds interest in certain mining claims in the state of Washington, the said sum of $350,000 to be paid in the manner following; that is to say:

"The sum of fifty thousand ($50,000) dollars paid as aforesaid; the sum of one hundred and twenty-five thousand (125,000) dollars on or before the tenth day of December, A. D. 1891, and the balance of one hundred and seventy-five thousand ($175,000) dollars to be paid as follows: Whenever and as often as the said parties of the second part or their assigns shall receive upon the interest in the said mining claims hereby purchased by them, in net earnings or dividends from the working or operation of the said mining claims, or from any sale thereof, either by themselves in association with the said party of the first part hereto or his assigns, or by any corporation which shall succeed to the ownership of the said claims, such net earnings or dividends shall be paid over to the party of the first part hereto or his assigns, until the said balance of one hundred and seventy-five thousand ($175,000) dollars has been paid in full."

The agreement then contains provisions for ascertaining the net earnings or dividends, and the said parties of the second part further agreed that:

"They or their assigns will commence to develop and work the said mining claims within the period of two (2) months after a railroad shall have been completed and be in operation to the said mining district of Monte Christo, and that thereafter they will continuously continue to develop and work the said mining claims with a force of not less than ten (10) men until the said sum of one hundred and seventy-five thousand ($175,000) shall have been fully paid from the net earnings of the mines as aforesaid."

And it was further agreed that the parties of the second part should execute to the party of the first part their bond in the sum of $175,000, conditioned on the continuous development and working of the said mines by the parties of the second part, or their assigns, subject, however, to the provisions of the agreement, and the payment of the said sum of $175,000 out of the net profits thereof—

"Provided, however, that if the said parties of the second part shall cease to work and develop the said mines as herein stated for any other reason than

injunction as hereinbefore provided, then so much of said balance of one hundred and seventy-five thousand ($175,000) dollars as may then remain unpaid shall bear interest at the rate of six per cent. per annum, payable semiannually out of the said net earnings or dividends of the said mines; and so long as the said interest is so paid, the said bonds shall not be deemed to be forfeited. It being mutually understood and agreed that in the case of forfeiture of said bond, the said party of the first part, or his assigns, shall be deemed to be damaged thereby in a sum equal to the balance of said sum of one hundred and seventy-five thousand ($175,000) dollars remaining unpaid at the time of such forfeiture; which said unpaid balance shall be, in such event, deemed and treated as stipulated damages."

This agreement was signed by the party of the first part (Bond), the parties of the second part (Colby and Hoyt), and F. W. Williams and Edward Blewett, two of the plaintiffs in this action. This agreement having been duly executed, the property was conveyed to Colby and Hoyt, and the sum of $175,000 paid in cash and a bond was given, dated the 10th day of December, 1891, by which Colby and Hoyt were held and firmly bound unto Hiram G. Bond in the full sum of $175,-000 jointly and severally. The bond recited the execution of this contract of November 28, 1891, between Bond and Colby and Hoyt, which was set out in full; that Bond, at the request of Colby and Hoyt, had conveyed to George S. Brown and Francis H. Brownell, by deed sufficient in form to comply with said contract, an undivided two-thirds interest in said mining properties in the contract described, the said conveyance being in trust for the obligors, Colby and Hoyt; and that the sum of $175,000 of such purchase price remains to be paid in the manner provided in the said contract, and provided:

"Now, therefore, if the said obligors or their assigns shall well and truly perform each and every of the covenants, promises and agreements, in said contract stipulated to be performed by said obligors, subject, however, to each and every of the provisos and limitations to such covenants, promises and agreements in said contract contained, then this obligation shall be void and of no further force or effect. But, if the said obligors or their assigns, shall fail, refuse or neglect to perform any of such covenants, promises or agreements (subject, however, to the provisos and limitations aforesaid), then, in any such event this bond shall remain in full force and effect, and become absolute."

The bond further provided that if the obligors or their assigns should cease to work and develop the said mines for causes other than injunction, as specified in the contract, then so much of the balance of $175,000 as should then remain unpaid should bear interest at the rate of 6 per cent. per annum, payable semiannually out of the said net earnings or dividends of said mines, and, so long as the said interest was so paid, the bond should not be deemed to be forfeited. It was further understood and agreed that, in case of forfeiture of this bond, the obligee or his assigns should be deemed to be damaged thereby in a sum equal to the balance of the said sum of $175,000 remaining unpaid at the time of such forfeiture, which unpaid balance should be, in such event, deemed and treated as stipulated damages, with a further provision that, in case of such forfeiture, Colby and Hoyt could reconvey the undivided two-thirds interest in said mines to Bond or his assignee, and which reconveyance should be deemed in full satisfaction of the penalty incurred for such forfeiture and

from the penalty incurred in this bond, and that, in case of forfeiture of the bond, the obligors should have the right to make against such stipulated damages the set-offs provided in said contract, and that the bond should be surrendered for cancellation upon the execution and delivery to the obligee in the bond, or his assigns, of the mortgage annexed thereto. There was annexed to this bond a form of a mortgage which was executed by Bond, Williams, and Bluwett, but never seems to have been executed by Colgate and Hoyt.

The complaint alleges that the said Bond and the plaintiffs and the defendant Hunt have fully performed each and every of the conditions of the said bond upon their part to be performed; that the defendant Hoyt and Colby, and his heirs, executors, and administrators, obligors in said bond, have failed, neglected, and refused to carry out, fulfill, and perform the conditions of said bond as therein provided in the certain particulars specified. The complaint then alleges that, by reason of the premises and of the breaches of the conditions of the said bond, these plaintiffs and the said defendant Hunt have been and are damaged in and to the sum of $136,718.75, with interest thereon at the rate of 6 per cent. per annum from the 1st day of January, 1898.

The case came on for trial at a Trial Term of the Supreme Court. Before the case was finally disposed of the jury were discharged, and it was consented that the court should try the case without a jury, whereupon the court filed its decision, finding the execution of the contract and the execution of the bond alleged in the complaint; that on the 1st day of August, 1902, Hiram G. Bond assigned and transferred said bond or contract and the principal sum remaining due and payable thereon, amounting to twenty-five thirty-seconds thereof, to the plaintiff and the defendant Hunt, and that they are now the owners and holders thereof to the amount and extent aforesaid; that the said Bond and the plaintiffs and the said defendant Hunt have fully performed each and every of the conditions of the said bond or contract upon their part to be performed, that the two-thirds interest in the said mining claims covered by said contract was subsequently conveyed to a corporation; that thereafter the title to said mining claims was held by the said corporation until the 4th day of November, 1898, on which date it was conveyed by William C. Butler, receiver of said corporation, to Josiah B. Crooker, and thereafter, on the 10th day of July, 1899, conveyed by said Crooker to the Monte Christo Mining Concentration Company; that the defendant Hoyt and Colby and his heirs, executors, and administrators, obligors in said bond or contract, failed, neglected, and refused to carry out, fulfill, and perform the conditions of said bond or contract, in manner, form, and substance as therein provided, as alleged in the complaint, and, as a conclusion of law, that the defendant Hoyt was indebted to the plaintiffs and the defendant Hunt in the sum of $136,718.75, with interest at the rate of 6 per cent. per annum from the 1st day of January, 1898, and judgment was directed accordingly.

Upon the trial Bond, who was a party to the contract and was the obligee in the bond sued on, was examined as a witness for the plain-

tiff. The original bond and contract having been introduced in evidence, the witness testified that he received the $175,000 on the execution of the instrument, and that neither Colby nor Hoyt, nor their assigns, nor grantees of the property named in the deed and in the bond and agreement, ever offered to reconvey to him the property named in the bond and agreement, or any of it; that no demand was made upon him by either the defendant Hoyt nor Colby, nor their assigns or grantees, to perform any of the obligations to be performed by him; that the mortgage annexed to the bond never was executed, nor was any offer to reconvey the property named in the contract made. The plaintiff then introduced the conveyances by which this property was conveyed to the Pride of the Mountains Mining Company, and an order dated April 18, 1898, appointing a receiver of that company in an action wherein J. B. Crooker was plaintiff, directing the receiver to report to the court the financial condition of the company, a report by the receiver showing that the company was indebted in the sum of $168,000; that the assets of this company are of extremely doubtful value; that since the destruction of the railroad it was impossible to work the mines, and there was no prospect of being able to realize upon any of the assets except by a direct sale of all the assets of the company; that the company had borrowed $125,000 and issued therefor debenture bonds; that the proceeds of the sale of said debenture bonds were received by the corporation, and by it used in the payment of outstanding bills and obligations and in the further development and operation of its mining property; that the defendant company had not been able to operate any of its mines at a profit and a judgment which had been entered in the action directing the receiver to sell the property, the proceeds of such to be distributed among the creditors of the company. The receiver then sold the property to Crooker, creditor of the company, for the sum of $167,501.95, being the amount of the company's indebtedness. That sale was confirmed, and the receiver was directed to execute a deed and bill of sale of the property.

In determining the question as to the liability of the obligors upon this bond, there are two questions which require consideration. The first is whether the condition of the bond has been broken so as to impose any obligation upon the obligors; and the second is whether, it the condition of the bond has been broken, the (plaintiff) obligee is thereupon entitled to a judgment for the full amount of the bond, or is only entitled to the damages proved to have been sustained by him by reason of the violation, the bond being upon condition that it should be void if the obligors or their assigns should well and truly perform each and every of the covenants, promises, and agreements in said contract stipulated to be performed by said obligors. To entitle the plaintiffs to recover, they must prove that the obligors on the bond had failed to comply with the obligations of this contract. The contract provided for the purchase of these mining claims for $350,000, of which $175,000 was to be paid in cash and $175,000 was to be paid out of the earnings or dividends derived from the working of the mining claims, or the sale thereof. The obligors did not assume an obligation to pay this $175,000. Their entire

obligation was performed if they paid to the obligee all of the net earnings produced or realized from the working or sale of the mines. The defendant agreed in good faith to operate the mines; but, if they failed to operate the mines, so long as they paid interest on the amount of $175,000 out of the net earnings or dividends of said mines there should be no forfeiture of the condition of the bond. The failure to pay any portion of this sum was not a violation of any provision of the contract unless it was further proved that some profits or dividends had been realized from the working, operation, or sale of the mines. What Hoyt and Colby agreed to do was that:

"Whenever and as often as they or their assigns should receive upon the interest in the said mining claims purchased by them, in net earnings or dividends from the working or operation of the mining claims or from any sale thereof, either by themselves in association with the said party of the first part or his assigns, or by any corporation which should succeed to the ownership of the said claims, such net earnings or dividends should be paid over to the party of the first part or his assigns, until the said balance of $175,000 had been paid in full."

The parties contemplated that the mines should be worked either by Colby or Hoyt, or by a corporation which should succeed to the ownership of the claim; but it was the receipt by Colby and Hoyt of money realized from working or operating of or selling the mining claims which would create an obligation to pay anything to Bond or his assigns; and there is no evidence of any kind, nor does the court find, that either Colby or Hoyt receive in any way any earnings or dividends from the working or operation of the mining claims or any money from a sale thereof, or in any other manner. There was a further covenant that statements of accounts and settlements of the operation of said claims should be made quarterly in each and every year in order to ascertain the net earnings or dividends accruing upon the said interest in said claims purchased, to the end that the amounts payable to Bond, if any, on account of the balance, should be determined and paid quarterly in each and every year; but I do not find evidence that this covenant was broken. No demand for such accounts were made; and there was no agreement that the obligors should be compelled to find the obligee in order to submit the accounts to him; and, in the absence of proof that there were net earnings or money received by Colby and Hoyt which were applicable to pay to Bond under the contract, there was no branch by the obligors. Colby and Hoyt also covenanted that they would commence to operate and work the said mining claims within a period of two months after a railroad should have been completed and be in operation, and that thereafter they would continuously continue to develop and work the said mining claims with a force of not less than 10 men until the said sum of $175,000 was fully paid from the net earnings of the mines aforesaid. The plaintiffs failed to prove that Colby and Hoyt did not develop and operate the mining claims; that the mining claims were not developed so as to expose or produce all ore of every kind that was capable of being produced from them; or that the development of the claims was not fully completed by Colby and Hoyt. What was conveyed to them were mining claims; what they

agreed to do was to develop and work the said mining claims until the whole sum of $175,000 was repaid to the obligee of the bond. To "develop" is defined by Webster to be: "To free from that which enfolds or envelops; to lay open by degrees or in detail, to disclose, to produce or give forth." And, by the Standard Dictionary: "To uncover or unfold; to bring to light by degree, work out in detail." Thus to develop a mining claim is to uncover or bring forth that which it produces or can produce; but it could not have been the intention of the parties that after this mining claim had been developed and worked the obligors should still be forced to go on working the claims when they were exhausted and nothing remained to develop or work. The burden of proof was upon the plaintiff to show that the defendant had violated the conditions of this bond. The bond was conditioned upon the performance by the obligors of the contract which was made a part of it. The obligors contracted that they would proceed to develop and work the mining claims. They did develop and work the mining claims between the time that this contract was executed, the 28th day of November, 1891, and the appointment of the receiver, April 18, 1898, a period of over six years. If the mining claims had been developed and worked until they were exhausted and there was no longer anything to work, would the obligors have violated the contract because they did not pay the debts of the corporation incurred in developing and working the mining claims, when nothing had been or could be produced? What was contemplated, and what obligations the parties assumed, must appear from a fair consideration of the terms of the contract, and, when the mines had been fully developed and worked and it was disclosed that there was no ore that could be mined, or nothing from which could be realized on the further development and working of the mines profit or dividends, there was nothing to require the obligors to go on indefinitely with the working and development of a valueless and worthless mining claim. It was contemplated that the obligors might be forced to suspend the working of the mines, and that contingency was provided for by the provision of the contract that, if the obligors "shall cease to work and develop the said mines as herein stated for any other reason than injunction as hereinbefore provided, then so much of said balance of one hundred and seventy-five thousand ($175,-000) dollars as may then remain unpaid shall bear interest at the rate of six per cent. (6%) per annum, payable semi-annually out of the said net earnings or dividends of said mines; and so long as the said interest is so paid, the said bond shall not be deemed to be forfeited." Under this provision there was no absolute obligation to pay interest to prevent a forfeiture, but only to pay when they were net earnings or dividends applicable to the payment of the interest. The parties, therefore, contemplated the time when the development or working of the mines should become impossible or impracticable, and then the sole obligation that the purchaser of these mining claims assumed was that interest should be paid on the amount remaining due out of the net earnings or dividends received from the mines. That was the only obligation that a stopping of the development and mining of the mine imposed on the obligors and when the ore, or what-

ever it was expected would be taken from these mining claims, was exhausted, or it was ascertained that there was no mineral that could be mined, it seems to me that any obligation of the purchasers to make further payments, or to continue to work an exhausted or valueless mining claim, terminated. It was only upon a failure of. these purchasers to carry out the obligations assumed by their contract which imposed a liability upon them under this bond, and, while it is true that they might have terminated their liability at any time by reconveying the property to the vendor, or by giving to the vendor a mortgage upon the property, or, even after there had been a forfeiture of the bond, they might have satisfied any claim that the vendor could have against them by the retransfer of the property, there was no obligation on them to make such reconveyance or mortgage, and such a reconveyance or mortgage become impossible if the mining claims had been conveyed to a corporation as the contract contemplated. We are dealing with an obligation to pay to the vendor or his assigns $175,000. An obligation to pay that must be found within the contract, the performance of which was secured by the bond; and, if a fair consideration of the contract itself fails to disclose any covenant or obligation on behalf of the vendee which they have failed to comply with, then the condition of the bond was not broken, and the plaintiffs cannot recover.

The fundamental error upon which the judgment below was granted, and which pervades the argument of the learned counsel for the respondent, is that by this agreement the obligors of this bond assumed to pay $175,000 in one of three ways—either by the payment of the money, the delivery of the mortgage, or a retransfer of the property. I fail to find any such obligation imposed upon the obligors by the contract. They agreed that the mining claims should be developed and worked either by themselves or by a corporation to which the claims were to be transferred, and they also agreed that any profits or dividends realized from such development and workings or any moneys realized from a sale of the mining claims should be devoted to the payment of this sum of $175,000, and that, I think, was the extent of their obligations. They could satisfy these obligations by the execution of a mortgage or the retransfer of the mining claims, but there is no obligation, express or implied, to pay to the obligee of the bond any sum of money on account of this $175,000, except what they should receive as profits from the working of the mining claims, as dividends from the corporation to which the claims had been assigned, or from the proceeds of the sale of the claims. In the absence of proof that any such sum of money had been received by the obligors, there was no basis for a finding that the obligors had failed to pay to the obligee or his assigns any money due under the contract.

But it is said that the obligors, having by the transfer of the mining claims to the corporation put it out of their power to comply with the contract to further continue the development and working of the mines, therefore became liable to pay the whole amount that would have been due had they received $175,000 in profits or dividends or from a sale of the property; but such a disposition of the mining claims was dis-

tinctly recognized by the contract, and, when such a sale or disposition of the mining claims had been made by the obligors, it was then expressly provided what obligation the obligors assumed. They were to apply on account of this sum of $175,000 any dividends that they received from the corporation organized to develop and work the mines, or any sum of money that they received on account of the sale of the mining claims to the corporation. The transfer of the claims to the corporation would necessarily vest in the corporation the title to the property, so that the claims would be subject to the debts incurred by and to legal proceedings taken against the corporation. The fact that the obligors did what the contract contemplated they should do—convey the claims to the corporation for the purpose of developing and working them—was not such an act as made the obligors liable for the full amount that was to be paid when profits or dividends from the working of the mining claims had been received. If there was any obligation imposed upon the obligors because of this transfer to the corporation, it arose immediately upon the transfer of the claims to the corporation. But such a transfer was clearly contemplated by the contract, and was not a violation of it by the obligors. The fact that the corporation to whom the mining claims had been assigned, after several years' development and working of the claims without being able to realize any profits, became insolvent, and that the mining claims were sold by a receiver of the corporation appointed in proceedings against it, was not the result of any act of the obligors which imposed upon them any liability to the obligee. If there was any breach of the contract, it must have been by the original transfer to the corporation; but, as before stated, such a transfer was contemplated by the contract, and was one of the methods provided for by which the profits from working the claims could be realized so that payments could be made, and there was certainly no obligation imposed by the contract by which the debts of this corporation must be paid to avoid a transfer of its property in payment of its indebtedness. I do not think, therefore, that it was proved that the obligors upon this bond had violated any of the provisions of the contract and therefore no cause of action accrued.

This conclusion renders it unnecessary to determine whether or not, under the terms of this bond, a breach of the contract imposed a liability for the full amount of the bond, or only for the amount of damages that the obligee sustained by a breach of the conditions of the contract. I think, however, that the bond was for a penalty, and that a recovery upon it must be limited to the amount of the damages sustained in consequence of the violation of the conditions of the contract. The bond is in the usual form, by which the obligors are held and firmly bound unto the obligee for the full sum of $175,000, conditioned upon the performance by the obligors of the covenants, promises, and conditions in a contract which was made a part of the bond. This would be clearly a penalty restricting the obligee to a recovery of the amount of damage actually sustained by him by reason of a breach of the contract, were it not for the further provision of the bond that "it being mutually understood and agreed, that in case of forfeiture

of this bond, the said obligee or his assigns, shall be deemed to be damaged thereby in a sum equal to the balance of said sum of one hundred and seventy-five thousand ($175,000) dollars remaining unpaid at the time of such forfeiture; which unpaid balance shall be, in such event, deemed and treated as stipulated damages." But this provision apparently contemplated the breach of a substantial condition of the contract by which the contract could not be in any sense performed. A technical breach of one or more provisions of the contract not relating to an entire abrogation of it, such, for example, as a failure to render an account of earnings when demanded, which would clearly impose no damage upon the obligee, would not work a forfeiture so as to compel the obligors to pay the whole amount of $175,000.

In Caesar v. Rubinson, 174 N. Y. 492, 67 N. E. 58, where the sum of $1,000 was deposited as security for the faithful performance of the contract, it being provided that in case of any breach thereof said amount should be retained as liquidated damages for such breach, the court said:

"The character of the deposit, whether liquidated damages or a penalty, depends upon the intention of the parties as disclosed by the situation and by the terms of the instrument. The deposit is not necessarily to be regarded as liquidated damages, although it is expressly so stated in the instrument. Whether it is that or a penalty depends upon the nature of the transaction and the intention of the parties. * * * A provision in a contract such as that 'now under discussion will be treated as liquidated damages only in those cases where, from the nature of the transaction, the actual damages consequent upon a breach of the contract are incapable of accurate measurement, or where the sum specified in the instrument is not out of all proportion to any damages which could possibly arise from a breach."

And in Ward v. Hudson River Building Company, 125 N. Y. 230, 26 N. E. 256, it is said that:

"Where, however, a sum has been stipulated as a payment by the defaulting party, which is disproportionate to the presumable or probable damage, or to a readily ascertainable loss, the courts will treat it as a penalty, and will relieve, on the principle that the precise sum was not of the essence of the agreement, but was in the nature of a security for performance."

In this case the contract provided for the payment of the sum of $175,000 out of the proceeds or dividends received by the obligors from the development and working of these mining claims, or from a sale thereof, and it was to secure the performance of this contract that the bond was executed. It would seem to have been conceded that the mining claims transferred were developed and worked for several years at a large cost, that no profits or dividends were ever realized, and that finally the workings were abandoned because the corporation to whom the mining claims had been transferred had become insolvent; such insolvency being caused by the loss sustained in attempting to develop and work the claims. This, clearly, was not such a violation of the contract as was contemplated by the parties as imposing upon the obligors a liability for the full amount of the penalty of the bond. Such penalty, in the absence of any proof that the mining claims were of any value at the time the development and work-

ing of them ceased, would be the imposition of a penalty for failure to perform an impossibility—the obtaining of profits or dividends from mining claims which were incapable of producing any profits or dividends. This brings the case within the rule stated in the authorities before cited. that where a penalty of a sum of money is imposed out of all proportion to any damage that could possibly be sustained, it is to be treated as a penalty, and not as liquidated or stipulated damages.

There is another objection to this judgment which, though somewhat technical, seems to be fatal. The plaintiffs commenced an action to recover their interest in this bond, evidenced by an assignment by the obligee which assigned the bond to the plaintiffs and the defendant Hunt. The bond was under seal and was payable to H. G. Bond. Before the action was brought Bond executed an instrument reciting that he held twenty-five thirty-seconds of the bond in trust for Leigh Hunt, Edward Blewett, Fred W. Williams, and James M. Williams, who were the beneficial owners thereof, and therefore, in consideration of the premises and of the sum of $1, Bond assigned and set over unto these four persons "the said bond to the extent of twenty-five thirty-seconds thereto, to have and to hold the same according to their respective interests therein." Hunt refused to join in this suit, and was made a party defendant. He interposed an answer which asked no judgment and demanded no affirmative relief from his codefendant Hoyt, and no copy of that answer was served upon Hoyt. No judgment in this action, therefore, could be given in his favor against Hoyt, but the court awarded judgment in favor of the three plaintiffs and the defendant Hunt against Hoyt for the full amount of the bond. There was no evidence to show what interest Leigh Hunt had. For all that appears, he might have owned all but a nominal amount, and yet he was entitled to no judgment, and could have none awarded to him in this action. The assignment was not to these four persons equally or from which equality could be inferred, for it was assigned to them, to have and to hold the same according to their respective interests therein, and, to justify the recovery sought in this action, the plaintiffs' respective interests in the bond would have to be proved and a judgment awarded for their interests, and not for the whole amount due. In the form in which it is it seems that the judgment cannot be sustained.

The judgment should therefore be reversed, and a new trial ordered, with costs to defendant Hoyt to abide the event.

McLAUGHLIN, J., concurs.

SCOTT, J. I concur in the reversal of the judgment appealed from, but I do not agree that the obligors on the bond released themselves from its obligations by transferring the property or that the only liability they can be charged with under the bond, if any, is one which arose when they made the transfer.

Upon a careful reading of the contract and the bond it will be seen that nowhere is there an absolute agreement on the part of the

obligors to pay the sum of $175,000. The contract provides that that sum shall be paid "as follows," and then follow careful provisions for paying the amount out of earnings. The bond provides that the $175,000 shall be paid "in the manner provided in said contract," so that neither in the contract nor the bond is there any agreement to pay the $175,000 otherwise than out of the earnings or dividends produced by working the mines. I think that it clearly appears that the basic idea of the agreement was that the $175,000 should, if paid at all, be paid out of earnings, and that the mines, if properly worked, would produce enough to pay that sum. The bond upon which this action is founded is not therefore conditioned to pay $175,-000 absolutely, whether it shall be earned or not. It is conditioned for the fulfillment by the obligors, or their assigns, of the covenants, promises, and agreements therein recited. These are to pay over all net earnings and dividends, as received, up to $175,000; to make statements and settlements of accounts; and to commence to develop and work the mines within a certain time, and to keep not less than 10 men at work. The provisons as to a reconveyance, and for substituting a mortgage for the bond, are not in the nature of obligations assumed by the obligors, but merely option given to them whereby they might, if they saw fit, relieve themselves from all obligations. The obligations of the bond therefore really are reduced to two, viz.: First. To pay the $175,000 as and if received out of net earnings or dividends. It is conceded that there have been no net earnings or dividends, and consequently there has been no default in this regard. Second. That the defendants, or their assigns, will do certain things with respect to the working of the mines, designed to insure the realization of earnings and dividends, and their proper application to the payment of the $175,000. It is conceded that neither the obligors on the bond nor their assigns have continuously worked the mines, as it was agreed they would do, and it is for this breach that the present action must depend if it is to be maintained at all.

In this aspect, the sum of $175,000 mentioned in the bond must be considered as a penalty, leaving plaintiff to recover only so much damages as can be shown to have resulted from this breach. Code Civ. Proc. § 1915. In other words, the obligors' breach was that they did not so work the mines as to produce the $175,000, which, if earned, would have been payable to plaintiff, but, unless it is made to appear that, if the obligors had continuously worked the mines, they would have been able to earn the $175,000 or some part thereof, the plaintiffs have suffered no damage from the failure so to work. The fact that the obligors assigned the mining claims to a corporation is of no importance. Both the contract and the bond are full of clauses and phrases showing that such an assignment was contemplated by the parties. And the assignment had practically no effect upon the relation of the parties to this action, for the covenant of the obligors was that they or their assigns would do the things covenanted for. Thus the obligors became in effect sureties that their assigns would do the things agreed upon, and, upon the failure of the assigns to do them, the promise of the obligors was broken. Since there was no

evidence justifying a recovery under this view of the case, I am for reversal of the judgment and a new trial.

PATTERSON, P. J., and CLARKE, J., concur.