But upon cross-examination he testified:

"I have known of a compound fracture of both bones of the leg before now. Q. And you have known patients to make a recovery, have you not? A. Yes; plenty of them."

And it further appeared in cross-examination that in answer to the hypothetical question he had assumed conditions not stated in the question, and of which there was no proof in the case.

It was the plaintiff's duty to furnish the necessary medical testimony and the defendant was entitled to assume that the plaintiff would perform that duty. Not having done so, counsel for the defendant stated that he was surprised and asked for an opportunity to get the attending physicians from the hospital, but the learned court refused an adjournment for that purpose. So that, as the case went to the jury, there was no evidence to support the cause of action alleged in the complaint, and the refusal to dismiss was error.

There were other matters claimed to constitute error, to which exception was duly taken, which we do not deem necessary to consider as they may not occur upon a new trial. For the reasons stated, the judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

PATTERSON, P. J., and LAUGHLIN and SCOTT, JJ., concur.

INGRAHAM, J. I concur in the opinion of Mr. Justice CLARKE, but I also think that there was no cause of action proved and that the court should have dismissed the complaint. The deceased was engaged in excavating a trench in which during the course of the excavation it appeared that a stone protruded from a wall of the trench about 18 inches or 2 feet. It was determined to build this stone into the retaining wall on the side of the trench and not to attempt to take it out, and the deceased with the other workmen engaged in the excavation continued their work. There was nothing in this situation that appeared dangerous to the workmen if they exercised ordinary care in working around this exposed stone and the men seem to have been cautioned in relation to it. The situation was as apparent to any of the men in the trench as it was to the defendant or his agents, and there is nothing to show that the defendant should have anticipated such an accident or was negligent in not providing against it.

---

BEVERIDGE v. WEST SIDE CONST. CO. et al.

(Supreme Court, Appellate Division, First Department. January 22, 1909.)

1. VENDOR AND PURCHASER (§ 179*)—CONSTRUCTION OF CONTRACT—PAYMENTS.
     The fact that part of the purchase price of land was payable in cash on the execution of a contract for its sale, and the other by a fixed estimated equity in mortgaged property to be conveyed on a day specified and before the time set for the completion of the principal contract,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

does not affect the principles of law governing payments on contracts for the conveyance of real estate.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 365; Dec. Dig. § 179.*]

2. VENDOR AND PURCHASER (§ 335*)—EXECUTORY CONTRACTS—BREACH BY VENDEE—FORFEITURE OF PAYMENTS.

On a breach by the vendee of an executory contract for the sale of land, the vendor is entitled to retain the whole of the payments made thereon by the vendee, and is not confined merely to his actual damages.

[Ed. Note.—For other cases, see Vendor and Purchaser, Cent. Dig. § 981; Dec. Dig. § 335.*]

3. DAMAGES (§ 85*)—EXECUTORY CONTRACT—BREACH BY VENDEE—LIQUIDATED DAMAGES.

The fact that an executory contract for the sale of land provides that the vendor, on a breach by the vendee, may retain all payments thereon as liquidated damages, which the law would allow him without such agreement, does not transform such damages into a forfeiture or penalty, and thus entitle the vendor to only actual damages.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 179; Dec. Dig. § 85.*]

Appeal from Special Term, New York County.

Action by Alven Beveridge against the West Side Construction Company and Jacob Axelrod to set aside a provision in a contract for the sale of real property, and to recover back the amount paid thereon. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, CLARKE, and SCOTT, JJ.

Franc, Neuman & Neugrass (David Leventritt, of counsel, and James J. Franc and Frederick Neuman, on the brief), for appellants.

John P. Everett, for respondent.

CLARKE, J.   Belle G. Beveridge, plaintiff's wife and assignor, entered into a contract in writing with the defendant West Side Construction Company for the purchase and sale of a piece of real estate, with a building thereon in process of construction, known as Beverly Hall, No. 316 West Ninety-Fourth street, for $117,500, and defendant Axelrod, the president of said company, entered into a separate agreement under which he guaranteed the faithful performance of the contract by the said company. The contract was executed on the 26th day of August, 1902, and the date for closing was the 1st of December, 1902, with a proviso for an extension not exceeding 60 days from said date.   Payment was provided for as follows: By the payment of $2,500 in cash upon the execution and delivery of the agreement, receipt whereof was acknowledged; by taking the premises subject to a first mortgage of $80,000; by the execution and delivery by the purchaser of a bond secured by a second purchase-money mortgage for $14,000; by the execution and delivery by the purchaser of a deed of the premises No. 244 West 102d street, subject only to a mortgage of $24,000, the equity in said property being so fixed at the sum of $11,000.   Said deed was to be executed and delivered as soon as a sec-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ond and third mortgage, then liens upon said premises, should have been paid off and satisfied. The contract provided that:

"If said conveyance of said premises subject to said mortgage of only $24,000 is not made on or before the 1st day of October, the party of the first part shall retain as liquidated damages for such failure the said sum of $2,500, and thereupon this contract shall terminate, and neither party shall have any further claim against the other by reason of the provisions of this agreement."

By the purchaser paying the balance, to wit, the sum of $10,000, in cash upon the execution and delivery of the deed to the premises No. 316 West Ninety-Fourth street, interest and insurance was to be adjusted as to each of the premises above mentioned as of the dates of the conveyance of the title, but at the time of closing of the title to 316 West Ninety-Fourth street. The contract further set forth:

"It is further provided that if, after the conveyance of said premises 244 West 102nd street to the party of the first part by the party of the second part, the party of the second part shall fail to carry out the provisions of this contract on her part to be performed, provided a good marketable title to said premises 316 West 94th street is tendered her, the party of the first part shall retain the said premises 244 West 102nd street and all payments in cash on account of the purchase price of 316 West 94th street, as liquidated damages for the non-fulfillment of this contract, and thereupon neither party shall have any further claim against the other by reason of this agreement, which shall thereupon terminate. If, however, the party of the first part shall fail to perform and discharge the agreement on its part to be performed, or shall fail to tender a marketable title of the premises 316 West 94th street, as hereinbefore provided, said party of the first part shall repay to the party of the second part all payments in cash theretofore made on account of the purchase of said premises 316 West 94th street and shall also reconvey to the party of the second part the said premises 244 West 102nd street, subject to said mortgage of $24,000, or if the said premises have been sold by a bona fide sale, the party of the first part shall account to the party of the second part for the proceeds of sale over and above the said mortgage of $24,000."

There was a further provision in regard to taxes and also in regard to taking possession of the 102d street house immediately by a caretaker, and the party of the second part was given the right by her agents to take charge of the renting of the apartments in the Ninety-Fourth street house, all rents to be turned over to the party of the first part to be applied on this contract.

The West 102d street house was conveyed on September 24, 1902, and so before the 1st day of October, 1902, the date fixed by the contract, and on November 11, 1902, and before the date of closing, was sold for $28,500 subject to the mortgage of $24,000. An adjournment of the date of closing was had as provided in the contract, but the plaintiff's assignor breached the contract, as found by the court in the following language:

"That the said Belle G. Beveridge voluntarily and causelessly refused to complete on her part the performance of the said Beverly Hall contract, but defaulted in the performance thereof."

The court also found:

"That the premises No. 316 West Ninty-Fourth street, known as 'Beverly Hall,' were completely and entirely finished by the defendant West Side

Construction Company prior to the 2d day of February, 1903, and in the manner prescribed by the aforesaid Beverly Hall contract of August 26, 1902."

It also found:

"That the plaintiff as the assignee of the said Belle G. Beveridge did not perform on his part the terms of the said Beverly Hall contract on either the 2d, 4th, or the 7th days of February, 1903."

Although the court affirmatively found that plaintiff had breached the contract, nevertheless it also found:

"That the amount which the said contract required the plaintiff's assignor to forfeit in the event of a breach upon her part, viz., $13,500, is altogether disproportionate to the damages which the defendants sustained by reason of such breach; that the damages which the defendants actually sustained by reason of the breach of said contract are definitely ascertainable and amount to $2,922."

And found as matter of law:

"That the aforesaid provisions prescribing the penalty to be suffered by plaintiff's assignor upon a breach are null and void, and that, after allowing for the damages suffered by defendants amounting to the sum aforesaid, I direct that a judgment be entered in favor of the plaintiff and against the defendants in the sum of $10,578."

That is, the payments in an executory contract for the sale of real estate, the person making such payments having causelessly breached the contract, are created by this decision of the learned court penalties and forfeitures, and as such held to be excessive, invalid, and void, and a judgment given to recover them back.

In brief, the contract provided (1) for a payment on its execution of $2,500; (2) for a conveyance of 244 West 102d street, subject only to a mortgage of $24,000. If the conveyance of the 102d street house was not made by October 1, 1902, the $2,500 should be retained as liquidated damages, the contract should terminate, and neither party should have any further claim against the other. If, after the conveyance of the 102d street house, the purchaser should fail to carry out the provisions of the contract, the vendor was to retain the 102d street house and all payments in cash on account of the purchase price as liquidated damages for the nonfulfillment of the contract, and it should terminate. These were down payments one to be made on execution of the contract, the other by October 1st, one in cash, the other by conveyance of specific property subject to a specified mortgage, the equity arbitrarily fixed at $11,000, both sums to be credited to the purchase price on completion of the contract, and both to belong to the vendor if the vendee failed to complete. The fact that one sum was payable in cash on execution of the contract, and the other by a fixed estimated equity on a mortgaged property to be conveyed by a day certain, and long before the time set for the completion of the main contract, in no degree affects the well-considered principles of law governing payments on contracts to convey real estate.

Ketchum v. Evertson, 13 Johns. 364, 7 Am. Dec. 384, was an action of assumpsit by a vendee to recover from the vendor under a real estate contract $700 paid by the former on account of the purchase price. The court said:

"It may be asserted. with confidence, that a party who has advanced money or done an act in part performance of an agreement, and then stops short, and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations, according to the contract, has never been suffered to recover for what has thus been advanced or done. The plaintiffs are seeking to recover the money advanced on a contract, every part of which the defendant has performed, as far as he could by his own acts, when they have voluntarily and causelessly refused to proceed, and thus have themselves rescinded the contract. It would be an alarming doctrine to hold that the plaintiffs might violate the contract, and, because they chose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover it back that the plaintiffs have. The defendant's subsequent sale of the land does not alter the case. The plaintiffs had not only abandoned the possession, but expressly refused to proceed, and renounced the contract. To say that the subsequent sale of the land gives a right to the plaintiffs to recover back the money paid on the contract would, in effect, be saying that the defendant could never sell it, without subjecting himself to an action by the plaintiffs. Why should he not sell? The plaintiffs renounced the contract, and peremptorily refused to fulfill it. It was in vain, therefore, to keep the land for them. The plaintiffs cannot, by their own wrongful act, impose upon the defendant the necessity of retaining property which his exigencies may require him to sell. This would be most unreasonable and unjust, and is not sanctioned by any principle of law."

In Havens v. Patterson, 43 N. Y. 218, the court said:

"There is no principle in law or equity which will sustain such a claim, and I have been unable to find any authority to favor it. It would sanction the doctrine of allowing a party to recover back money paid upon an executory agreement which he had neglected and refused to perform on his part. This is never permitted either in law or in equity." Ketchum v. Evertson, 13 Johns. 365, 7 Am. Dec. 384; Battle v. Rochester City Bank, 3 N. Y. 88; Haynes v. Hart, 42 Barb. 58; Lawrence v. Simons, 4 Barb. 354.

In Page v. McDonnell, 55 N. Y. 299, Grover, J., said:

"But the defendants were ready and willing, and tendered full performance on their part. The plaintiff neglected and refused to perform on his part for which reason the contract was terminated by the defendants. Under these facts, the plaintiff is not entitled to recover the money he had paid thereon."

In Lawrence v. Miller, 86 N. Y. 131, Folger, C. J., said:

"It is ingeniously argued that, though the vendee has made breach of his contract, all that the law will give for that is the damage that the vendor has suffered thereby; and that, therefore, he has no right to keep the $2,000, though it be granted that he had a right to rescind the contract. * * * It is declared by this court in Havens v. Patterson, supra, that it is never permitted either at law or in equity for one to recover back money paid on an executory contract that he had refused or neglected to perform. The plaintiff in the action before us sues for the whole amount of the money paid by the vendee. The defendant came by it rightfully, in pursuance of a contract lawfully made, between competent parties. He has made no breach of that contract. He has failed in no duty to the vendee. Wherefore, then, should he give up that which was rightfully his own? When and whereby did it cease to be his, and to be due to the vendee? If the contract had been kept by both parties, the money paid would still be his of right. The contract would have been kept but for the breach of it by the vendee. To allow a recovery of this money would be to sustain an action by a party on his own breach of his own contract, which the law does not allow. * * * Nor can the specious view be taken, presented by the plaintiff, that the defendant is entitled to no more than he has actually been damaged. That was

substantially the question in Stephens v. Beard, 4 Wend. 604, and the answer was against it."

In Lakoschowsky v. Utopia Land Co., 125 App. Div. 827, 110 N. Y. Supp. 182, where the action was brought to recover back an amount which had been paid upon the execution of a contract to purchase land and in monthly installments, the vendee having failed to continue his payments as agreed, this court said:

"When he sued, therefore, he was in the position of a vendee who has declined to pay the purchase money in the manner and at the times specified in the contract. He has, therefore, no cause of action either to recover back the money already paid or to ask for damages for defendant's refusal to go on with the contract."

This being, then, the well-settled rule of law that payments upon an executory contract for the sale of land may not be recovered by the vendee, if the contract has been breached by the vendee, that the vendor is entitled to retain the whole thereof, and not merely his actual damages, what effect can it have upon the legal or equitable relations of the parties that they agreed in writing for that which the law would have provided without special agreement? The statement that these sums shall be retained upon breach as liquidated damages does not affect the law which so provides without agreement. The argument that so characterizing the legal right to retain these moneys as liquidated damages transformed them into penalties and forfeitures, and therefore no more than the actual damage, to be alleged and proved, can be retained, has no support.

The respondent relies upon Scott v. Montells, 109 N. Y. 1, 15 N. E. 729, Chaude v. Shepard, 122 N. Y. 397, 25 N. E. 358, and Caesar v. Rubinson, 174 N. Y. 497, 67 N. E. 58. No one of these cases apply. In each the question involved was a sum deposited as security for the performance of the terms of a lease, where, after breach, the landlord had re-entered and then sought also to retain the security. In those cases the rule applying to payments on executory contracts for the sale of real estate was recognized and supported. As in Chaude v. Shepard, supra, the court said:

"It is, however, urged by the learned counsel for the defendant that, as the money was actually placed in the possession of the defendant pursuant to the contract at the time of the execution of the lease, the disposition of it is governed by a different rule from that which would have been applicable if the claim to it had been founded upon the executory agreement of the plaintiff to pay it. That would have been so if the money had been paid upon the contract by way of partial performance by the plaintiff. In such case the party so paying, and afterwards, by reason of his default, is deprived of or denied the benefits of his contract, cannot recover back the money so paid by him upon it"—citing Page v. McDonnell, Lawrence v. Miller, and Havens v. Patterson, supra.

The respondent also cites Broadbooks v. Tolles, 114 App. Div. 646, 99 N. Y. Supp. 996. In that case there was a covenant not to engage in business within a stipulated territory for a stipulated period, with stipulated damages for violation thereof. It was of such stipulation that the court said:

"If there is a breach of the covenant of stipulation, the vendee may recover his actual damage; or, if they have been stipulated by the parties, the sum

thus agreed upon may ordinarily be recovered as liquidated damages, unless the sum specified is manifestly disproportionate to any damages accruing from the breach of the agreement"—and cited Ward v. Hudson River Building Co., 125 N. Y. 230, 26 N. E. 256, which involved damages for delay in completion stipulated in a building contract; Curtis v. Van Bergh, 161 N. Y. 47, 55 N. E. 398, which also involved a stipulation for damages for delay in a building contract; Hicks v. Monarch Cycle Mfg. Co., 176 N. Y. 111, 68 N. E. 127, which considered a stipulation as to the value of a bicycle which had been delivered for examination and return; and Caesar v. Rubinson, 174 N. Y. 496, 67 N. E. 58, a deposit by way of security for the faithful performance of a lease.

Blewett v. Hoyt, 118 App. Div. 227, 103 N. Y. Supp. 451, was an action on a collateral bond given by the defendant as security for the payment of an unpaid balance on the purchase price of certain mines, and, like the other cases above alluded to, has no application to that at bar. We have searched in vain to find any cases in this state affecting the rule that a vendee who has made a payment on an executory contract for the purchase of real estate who has causelessly breached the contract, which has been fully performed by the vendor, cannot recover back the amounts paid.

The respondent claims that the appellants did not fully perform on their part, but the court has found:

"That the said Belle G. Beveridge voluntarily and causelessly refused to complete on her part the performance of said Beverly Hall contract, but defaulted in the performance thereof."

This finding is utterly inconsistent with any other conclusion than that the appellants had performed, because, if not, she could not have defaulted. Further, the learned court found "that the damages which the defendants actually sustained by reason of the breach of said contract are definitely ascertainable and amount to $2,922"; and in the conclusions of law "that the damages suffered upon the breach by plaintiff's assignor of the contract (designated as Plaintiff's Exhibit 1) are ascertainable and amount to the sum of $2,922." Of course, this finding could only be made upon the ground that the appellants had performed. The court also found that the building was completely and entirely finished prior to the adjourned day of closing in the manner prescribed by the contract, and the evidence established that the vendors were ready, willing, and able to complete and had with them at the adjourned day of closing the deed, prepared, signed, and acknowledged, and the other necessary papers.

We do not deem it necessary to consider any other of the questions raised upon this appeal, and for the reasons stated, and as we are of the opinion that the clauses in the contract providing for payments on the execution thereof, and by the 1st of October, 1902, were not clauses providing for a penalty, this judgment declaring said provisions to be void and that plaintiff recover the sum of $10,578, with interest and costs, should be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.