82 So.2d 504 (1955)
Stanley GOLDFARB and Ruth Goldfarb, his wife, Appellants,
v.
F.M. ROBERTSON, Appellee.
Supreme Court of Florida, Special Division A.
September 23, 1955.
*505 Weinkle & Kessler, Miami, for appellants.
Durant & Durant, Miami, for appellee.
ALLEN, Associate Justice.
This is an appeal from a final decree of the Circuit Court for Dade County in chancery entered for the appellee Robertson and against the appellants Goldfarb in a proceeding instituted against them by interpleader filed by Guaranty Title & Abstract Corporation, escrow agent in a sales transaction between Robertson as seller and the Goldfarbs, appellants, as buyers.
The appellee, Robertson, sold to the appellants certain real estate and a business known as National Builders Supply Co. By the terms of the deposit-receipt agreement between the parties it was agreed "that the buyer and seller will operate the business as of January 8, 1954, the seller to make no purchases. Although the closing date of the transaction will not be effected until within fifteen days from the execution of the agreement, nevertheless, it is agreed that the purchase of the business, for all intents and purposes is effected as of January 8, 1954."
The buyer took possession and made the required initial part payment of $2,500 to be credited as part payment of the purchase price, but at the time of closing refused to consummate the deal until the seller presented books and records showing paid invoices for certain materials in stock which they allegedly suspected to be stolen or fraudulently obtained. The appellee, orally agreed to produce such records, although the agreement between the parties contained no such provision, but, by virtue of some further disagreement between the parties the bills were not produced. The appellants refused to complete the purchase agreement and abandoned possession.
After personally hearing the testimony in the cause the lower court concluded "that the buyer had defaulted and that the seller was entitled to the $2,500 deposit."
The escrow contract agreement provided, "It is agreed between the buyer and seller that the buyer and seller will operate the business as of January 8, 1954, the seller to make no purchases. Although the closing of the transaction will not be effected until within fifteen days from the execution of this agreement, nevertheless, it is agreed that the purchase of the business, for all intents and purposes, is effected as of January 8, 1954, and that all proceeds of the business from January 8, 1954, shall be placed in escrow with Rollo E. Karkeet, Esq., and that whatever monies accumulate in that account shall be turned over to the buyer at the time of the closing, less any expense of operations since January 8, 1954." The contract also contained the following provision: "The seller agrees that, in view of the fact that the effective date of sale is January 8, 1954, the buyer will be permitted to be on the premises at any time during the normal working day, and may conduct himself on the premises as though it was his business."
The record in this case shows that the buyer made application for telephone service in his name, made application for electricity, gave information for directory listing of the business and initialed sales receipts. Other evidence appeared from the record which showed the buyer was in possession, and had taken over the business prior to the proposed closing date of January 21, 1954. The buyer's excuse for failing to carry out the contract was based on alleged statements made by the manager of the seller's business that cast suspicion on the title to the merchandise sold by the seller. Subsequently this man in response to the question, "Did you ever tell him that you could get doors cheap because they were stolen?" Said:

*506 "A. No such a thing. In operating that business for eight years, that place, which is heavy building material, it would sure come out in the wash, and National Builders Supply has a good reputation all over. You can verify it in Dun & Bradstreet; Coral Gables Supply * * *.
"The Court: Did you make any statement which indirectly indicated that some of these doors had been stolen?
"The Witness: No, Judge; no such thing.
"The Court: You did not tell Mr. Goldfarb then, or Mrs. Goldfarb, that this driver, Stanley, had delivered stolen doors that you did not pay for?
"The Witness: No; Judge.
"The Court: Was there any such arrangement?
"The Witness: No sir."
The lower court heard the evidence in this case personally and determined that the buyer had no just cause for not completing the purchase of the property and had in effect abandoned the same after purchase.
No authority needs to be cited for the proposition that this court is not entitled to substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court. See Hall v. Adams, 155 Fla. 1, 19 So.2d 412.
The appellant states the following question in his brief: "Where there is absent any provision for stipulated damages or for forfeiture of deposit in a contract for the sale and purchase of property, and where the seller has failed to show any damages, upon a finding that the contract purchaser is in default, is the measure of damages the sum of money deposited by the purchaser upon signing the contract?
"The appellants submit that the lower court incorrectly answered this question in the affirmative."
In the case of Beatty v. Flannery, Fla., 49 So.2d 81, 82, Justice Roberts wrote the opinion of the court in a case where the facts are very similar to the case now before this court.
The case of Beatty v. Flannery, supra, was an action on the common counts by Beatty, and wife, the purchaser, against a realtor, W.H. Flannery to recover earnest money paid defendant realtor on account of purchase price of certain realty. The lower court of Pinellas County, had entered judgment for the defendant and plaintiffs appealed. This court held that where title to realty involved was a merchantable title and plaintiffs' objections thereto were not justified, plaintiffs were not entitled to recover money paid in part performance of the executory contract. The court said that even in absence of a forfeiture provision, that a purchaser in default was not entitled to recover from vendor monies paid in part performance of an executory contract. In the court's opinion it was said:
"The plaintiffs contend here that the trial judge erred in adjudging that the entire amount of the `earnest money' was forfeited in the absence of pleading and proof of damages, their theory being that, under the decision of this court in Pembroke v. Caudill, 160 Fla. 948, 37 So.2d 538, 6 A.L.R.2d 1395, the provision for the forfeiture should be construed to be a provision for a penalty, and not one for `liquidated damages.' The defendant contends, on the other hand, that this case is not ruled by the Pembroke case, but must be decided in accordance with the previous decisions of this court involving an action by a vendee to recover partial payments made by him under the contract. We think that the contention of the defendant must be sustained.
"It is well settled that, even in the absence of such a forfeiture provision, a *507 vendee in default is not entitled to recover from the vendor money paid in part performance of an executory contract. 44 Am.Jur., Vendor and Purchaser, Section 535, page 927; Watkins v. Wells, 303 Ky. 728, 198 S.W.2d 662, 169 A.L.R. 185; Beveridge v. West Side Const. Co., 130 App.Div. 139, 114 N.Y.S. 521; Seekins v. King, 66 R.I. 105, 17 A.2d 869, 134 A.L.R. 1060; Hansbrough v. Peck, 5 Wall. 497, 18 L.Ed. 520, cited in Realty Securities Corporation v. Johnson, 93 Fla. 46, 111 So. 532, 536."
Later in the opinion it was further said:
"We recognize that there are exceptions to the general rule that a vendee in default cannot recover, but we find no such circumstances in this case. There was no intimation of fraud on the part of the vendor, nor that the vendee's failure to fulfill the contract was due to any misfortune beyond his control that gave the vendor a benefit, the retention of which was shocking to the conscience of the court. Nor is it here contended that there was a mutual rescission of the contract.
"The Pembroke v. Caudill case, supra (160 Fla. 948, 37 So.2d 542), relied on by appellants, was not concerned with an attempt by a vendee in default to recover a part payment, but on the contrary involved a suit by the vendor to recover from the vendee an amount stipulated therein to be liquidated damages in the event of default by the vendee. This court expressly stated that `We have made no attempt to settle certain questions which may arise under a stipulation similar to the one we have considered, in a case where a deposit of money has actually been made by the prospective purchaser for the benefit of the owner. * * * we express no opinion on the point, because we have no such issue before us.' As the record in the instant case stands, we do not consider the Pembroke case to be controlling."
In 55 Am.Jur., Vendor and Purchaser, Sec. 535, under the title "Where Vendee under Executory Contract Is in Default" is the following:
"In nearly all jurisdictions of this country a vendee in default cannot, as a general rule, recover back the money he has paid on an executory contract. So long as the lendor is not in default and is willing and able to perform, the purchaser cannot wrongfully refuse to complete the transaction and recover what he has paid toward the purchase money. * * *"
In a very recent case that of Hyman v. Cohen, Fla., 73 So.2d 393, this court in an opinion by Justice Roberts held that circumstances, including the fact that damage which landlord might sustain because of premature termination of lease could not be readily ascertained, and the fact that deposit under lease was not excessively disproportionate to possible damage to landlord, indicated that deposit, which lease provided should go to landlord in event lease were cancelled for default of tenant, had been intended to be liquidated damages rather than a penalty.
In this case the court further held that in the absence of any showing which would activate a Court of Equity in relieving tenant from forfeiture of deposit constituting liquidated damages in event of breach of lease, it was error to relieve tenant from forfeiture of such deposit.
The decree of the lower court is affirmed.
DREW, C.J., and TERRELL and ROBERTS, JJ., concur.