LAWRENCE *vs.* SIMONS & TAFT.

In order to maintain an action to recover back money paid under a special contract, the plaintiff is bound to show the contract at an end, either by a full performance thereof by both parties, or by some act of the defendant inconsistent with it, and disabling him from complying with its terms; or by a rescission, by the mutual consent of both parties.

If a special contract is ended, or the performance thereof has been prevented by the acts of one of the parties, such party cannot sustain an action against the other party, either upon the contract, or for money advanced by him in part performance of it.

And if one of the parties has fully performed, or offered to perform, the contract, on his part, he cannot maintain an action against the other party, to recover back moneys paid in pursuance of it, without showing a failure or inability to perform, on the part of the defendant.

A party may lose his right to enforce the specific performance of a contract, by delay in the demand, and an apparent abandonment of his claim; particularly if the situation of the parties has become changed in the meantime, and they may reasonably be presumed to have acted upon the faith of the abandonment of the contract. But a plaintiff will not be allowed to recover, in an action for

Lawrence *v.* Simons.

money had and received, for money advanced upon a contract, as upon a re-
scission of it, presumed from mere delay; without showing some violation of
the contract by the party sought to be charged. *Per* ALLEN, J.

MOTION to set aside report of referees, and for a new trial.
The action was assumpsit. The declaration contained the
common counts for money, merchandise, and work and labor.
The defendants pleaded the general issue, and gave notice of
set-off, in the usual form, and for lumber sold by the defendants
to the plaintiff. The cause was thereupon referred to referees.
On the trial the plaintiff proved an account against the defen-
dants, consisting of various items, amounting to $21,095,08;
and the defendants proved an offset, amounting to $17,528,44,
leaving a balance of $3566,64 due to the plaintiff, as found by
the referees. And the plaintiff obtained a report from the referees,
for that sum. It appeared from the evidence, that the various
payments and advances proved by the plaintiff, were made by
him under and in pursuance of a written contract between the
parties, dated March 10, 1842, which was still in force, not
completed, and not rescinded; and that such payments were
made by the plaintiff on account of lumber delivered, and to be
delivered, by the defendants, upon such contract. By the terms
of that contract, the defendants agreed to sell to the plaintiff all
the good, sound, merchantable lumber on certain lots of land
belonging to the defendants in Oswego county, for the sum of
$13 per thousand delivered at Fish creek landing. The lum-
ber was to be delivered from year to year, as fast as might be,
until all was delivered; and at the opening of navigation in
each spring the parties were to meet and measure the lumber
delivered; and if any should be sent to the landing that was
not considered by good judges to be good, sound, merchantable
lumber it was to be thrown out, and put at such prices as it
was worth. The plaintiff also agreed to pay ten dollars per
thousand for all the good, sound, merchantable lumber that
might be on a certain lot in Williamstown, owned by one Vincent
Taft, in case the defendants should buy that lot of Taft. And
the plaintiff further agreed to pay the defendants $13 per thou-
sand for a lot of lumber that they had bought of Isham Simons.

The agreement also contained a stipulation on the part of the plaintiff, to procure for the use of the defendants from five to six thousand dollars in advance, if they should want it, in the following manner: " We are to procure Jesse Matteson's endorsement on our note or notes to the amount of $1500, which said Lawrence is to procure the money on, and get them renewed from time to time, from one to two years; and to make up the balance, said Simons & Taft are to give their notes from time to time payable to the order of L. Lawrence, on which said Lawrence is to negotiate and get the money, or said Lawrence will give his note to the order of said Simons & Taft, if they can get it discounted at the Rome or any other bank." On the back of this contract was the following endorsement, signed by the plaintiff and the defendants, dated October 13, 1842 : " The above parties have this day looked over their account and find that Lewis Lawrence has advanced on their contract, and paid on account of the lumber purchased by the said Simons & Taft, the sum of $3037,18, and has also this day given to said Simons & Taft, upon said contract, his note of $500 at three months, and his note of $500 at four months, payable at Oneida Bank, Utica." The following agreement signed by Simons, one of the defendants, in the partnership name of Simons & Taft, and dated March 23, 1843, was also offered in evidence by the plaintiff: " We agree to let Lewis Lawrence take the lumber that he has bought of us on contract, and now in said Lawrence's possession at Fish creek landing, Vienna, Oneida county, supposed to be about fourteen hundred thousand feet in all that is now delivered at said landing, to sell and dispose of at the best price that he can get for said lumber, and to allow him for his trouble two dollars for each and every thousand of said lumber, if said Lawrence should choose so to do rather than take it and sort it, and inspect it according to said contract, and said Lawrence can go and take this lumber as soon as he chooses in the spring, by having S. Brown take an account of the measure of said lumber, and said Lawrence is to dispose of the lumber if possible so as to pay him the money that he has advanced to us, and likewise

Lawrence v. Simons.

the money that he has become responsible for on our account, at the best prices that it will fetch; but this writing shall in no wise affect the title of the lumber according to the contract. The lumber is solely said Lawrence's, and whether taken on the original contract or this, to ascertain the price said Lawrence shall allow to said Simons & Taft for said lumber. We, said Simons & Taft, have no claims on the lumber further than said Lawrence is to pay over to us, said Simons & Taft, the balance, if there is any after deducting all the money that he has advanced and become responsible to us for, and his commission of two dollars per thousand." The defendants' counsel objected that evidence of this agreement was incompetent, immaterial and irrelevant, and that Simons had no power to make such an instrument, and that it was not binding upon the defendants, and was without consideration and void. The objection was overruled, and the instrument was read in evidence, subject to the exception. No evidence was introduced by the plaintiff to show that the contract of March 10, 1842, had been rescinded, or that the defendants had abandoned it, or refused to perform it, on their part. The referees allowed the plaintiff, among other items, the sum of $2561,66, for his commissions on the sale of lumber, under the instrument dated March 23, 1843.

*Ward Hunt*, for the plaintiff.

*C. H. Doolittle*, for the defendants.

*By the Court*, ALLEN J. It is not material to inquire whether the plaintiff should not have sought his remedy by counting upon the special contract between the parties, rather than upon the common assumpsit. The objection to the form of the action, not having been taken upon the trial, cannot be made available at this time. ( *Underhill* v. *Pomeroy*, 2 *Hill*, 603 ; *S. C. in error*, 7 *Id*. 388.) The money advanced by the plaintiff to the defendants, and to recover which this action was brought, was advanced on the special contract of the

10th March, 1842, and in payment for lumber delivered, and to be delivered, by the defendants in pursuance of its terms. It was intended as a performance by the plaintiff of his agreement, to advance five or six thousand dollars to the defendants as they might want, and for which the defendants were to pay interest in their settlements. The money was not to be repaid upon request, as money, but was to be paid by the delivery of lumber under the contract. This was evidently the understanding of the parties, as evidenced by the receipts and memoranda made at the time, and given in evidence by the plaintiff. The plaintiff, therefore, to entitle himself to recover, was bound to show the contract at an end, either by a full performance thereof, by both parties, or by some act of the defendants, inconsistent with it, and disabling them from complying with its terms, or by a rescission by the mutual consent of all the parties. If the contract was ended, or the performance thereof prevented by the acts of the plaintiff, he could not sustain an action against the defendants, either upon the contract or for money advanced by him in part performance of it. (*Ketchum* v. *Evertson*, 13 *John.* 359.) And if the plaintiff had fully performed, or offered to perform, the contract on his part, he could not maintain an action against the defendants, without showing a failure or inability to perform upon their part. (*Fuller* v. *Hubbard*, 6 *Cowen*, 13; *S. C.* 7 *Id.* 53.) The defendants would not be called upon to show a performance, but the plaintiff would be compelled to prove the non-performance. (*Wheeler* v. *Broad*, 12 *John.* 363.) In *Green* v. *Green*, (9 *Cowen*, 46,) the cases are reviewed by Savage, Ch. J., and the rule laid down, as abstracted by the reporter, that " to warrant a recovery as for money had and received, paid under a special contract, a strict performance must be shown by the plaintiff, the same as if he had sued on the special contract itself; unless the contract has been expressly rescinded or impliedly so, as, by nothing having been done under it for a long time, or the party sought to be charged having acted inconsistent with it."

There is no evidence in the case tending to show that the

defendants have done any act inconsistent with the continuance or present validity of the contract, or disabling them from a full performance of its terms, or that the plaintiff having performed, or being ready to perform, on his part, the defendants have refused to perform on their part.  And it is not claimed that there is any evidence that the contract has been expressly rescinded by the parties.  The contract of 23d March, 1843, admitting it to be valid as a contract between the parties, (of which there is great doubt,) did not purport to rescind the first agreement or to vary its terms, except as to the lumber then actually delivered at Fish Creek landing.  On the contrary, the first contract is referred to as then subsisting in full force, and under which further action was to be had by the parties. Indeed, the lumber then on hand was not absolutely withdrawn from its operation, but it was left optional with the plaintiff to sell it under the arrangement then proposed, or to retain it as so much lumber delivered upon the contract.  But it is insisted that the referees inferred that the contract had been rescinded, from the fact that nothing had been done under it for a long space of time before the commencement of the suit. Doubtless a party may lose his right to enforce the specific performance of a contract by delay in the demand, and an apparent abandonment of his claim ; particularly if the situation of the parties has become changed in the mean time, and they may reasonably be presumed to have acted upon the faith of the abandonment of the contract.  (*Ballard* v. *Walker*, 3 *John. Cas.* 60.  2 *P. Wms.* 82.  *Orby* v. *Trigg*, 9 *Mod.* 2.  *Lady Lamborough's case, cited by Savage, Ch. J.*, 9  *Cowen* 46.) But I have found no case in which the plaintiff has been allowed to recover, in an action for money had and received, for money advanced upon a contract, as upon a rescission of it presumed from mere delay, without showing some violation of the contract by the party sought to be charged.  The great difficulty upon this branch of the plaintiff's case, however, is that there is an entire want of evidence that the parties had not, up to the time of the trial, continued their transactions under the conract.  The cessation of operations by the manu-

facture and delivery of lumber by the defendants, and the receipt thereof by the plaintiff under the agreement, was a fact to be proved by the plaintiff, and not to be disproved by the defendants, and was a fact material to the issue. ( *Wheeler* v. *Board, sup.*) The presumption is, until the contrary is shown, that a contract is still in force, and that the parties continue to act under and abide by it. (*Low* v. *Edmunston,* 5 *Iredell,* 354.) But the plaintiff asks us to presume a fact, of which there is no evidence, and from that presumed fact, draw a legal inference that the contract was rescinded. This we cannot do, when all the facts proved are entirely consistent with a different conclusion, and with a state of facts which would furnish a good defence to the action. And if the referees, as was contended upon the argument, acted upon the presumption that the contract was rescinded by reason of the lapse of time between the last transaction under it and the commencement of the suit, or the time of trial, then they clearly erred in rejecting proof offered by the defendants, that the parties acted under it through the season of 1843. The time was material. A discreet man might well infer an abandonment of a contract by a cessation of operations, or non-claim under it for four years, when he would not do it after a like cessation or non-claim for three years. And the reasons of a non-user for the latter term may be susceptible of explanations, while the longer term would not be capable of a like satisfactory explanation. At all events, if the question was to be taken against the defendants by lapse of time, they were clearly entitled to reduce that term which was to count against them to the minimum, and to have the judgment of the referees upon the actual term during which operations had been suspended under the contract.

The report must be set aside, and a new trial granted ; costs to abide the event.