ELIZABETH HAVENS, Respondent, *v.* JAMES PATTERSON, and others, Appellants.

Where the defendant made an executory contract with B and C for the sale of a piece of land, they taking immediate possession, and C afterward died, leaving the plaintiff (then a minor) his heir, and his widow and B were appointed his administrators, and default having been made in the payments under the contract subsequent to C's death, and the defendant, having notified B, that the payments in arrear must be paid within a fixed time or he would re-enter, and B having failed to pay and assenting to the re-entry, which was made.—*Held*, that the contract was at an end, and the plaintiff as heir of C, was not entitled to specific performance.—*Held* further, that she was not entitled to a return of the moneys paid by her father in his lifetime under the contract.

As to conditions to be performed, annexed to an estate, granted either to an ancestor, or himself, the *laches* of an infant will bar him of his right to the land, the same as if he were an adult.

(Argued December 2d, 1870; decided December 20th, 1870.)

APPEAL from the judgment of the General Term in the fourth judicial district, affirming the judgment entered upon a referee's report.

On the 22d of November, 1853, the defendant, James Patterson, as vendor, and the defendant, Anthony Furness, 2d, and Thomas Furness, since deceased, as vendees, entered into a contract for the sale of certain premises in the town

of Lisbon, St. Lawrence county, in this State. The vendees paid part of the purchase-money down, and took possession of the premises. Thomas Furness died in May, 1854, and Anthony Furness, 2d, and Julia A. Flora, his widow, were appointed his administrators. On the 19th of February, 1859, James Patterson notified A. Furness, 2d, and J. A. Furness, that unless the amount then due under the contract was paid, he would regard it as null and void, and would re-enter. On April 25th, 1859, J. Patterson gave notice that the contract was rescinded, and since May 1st, 1859, has held the premises. Thomas Furness left several heirs, all infants, two of whom, the plaintiff, and one other, are now of age. An offer of the amount due was made to James Patterson in 1866, and refused. The referee held, that neither Anthony Furness, nor the heirs of Thomas, were entitled to specific performance; that Anthony Furness was not entitled to restitution of the money paid, but that the heirs were, and granted costs to plaintiff, and all the defendants except Anthony Furness, against James Patterson. From the judgment entered on this report, Patterson appealed to the General Term, which affirmed it, and from such judgment of affirmance he appealed to this court.

*Samuel Hand,* (*Brown & Hasbrouck,* with him,) for appellant, insisted that the time to perform a condition is not extended on account of infancy. (*Griffin* v. *Griffin,* 1 Sch. & Lef. Rep., 352; Tyler on Infancy, 161; *Marker* v. *Marker,* 41 E. Ch. R., 15; *Jackson* v. *Moore,* 13 J., 513.) That contract was forfeited by failure to perform without notice. (*Utter* v. *Stewart,* 30 Barb., 20; 42 Barb., 58; 9 Cow., 46; 3 Comst., 88.) That the heirs cannot recover the money. (*Gillett* v. *Maynard,* 5 J., 86; 12 J., 274; 6 J. Ch., 398; 10 Barb., 432; 3 J. Ch., 312.) That judgment could not be rendered for one defendant against co-defendant. (Code, § 274; 1 E. D. Smith, 349; 1 Abb. Pr. R., 381.) That notice to one vendee was sufficient. (*Carman* v. *Pultz,* 21 N. Y., 547; *Brinckerhoff* v. *Olp,* 35 Barb., 27.)

*Foote & James,* for respondent, insisted that service of notice upon A. Furness could not prejudice infants' rights. (Rev. St., 5th ed., vol. 3, p. 14, § 44, p. 42, § 17; 2 Barb., 270; 1 Hill, 567; 9 W., 68; 7 Cow., 299; 10 Barb., 432.) When a party rescinds a contract, he must restore all he has received under it. (32 B., 183; 30 B., 20; 40 B., 432; 41 B., 420; 35 B., 76; 38 B., 488; 14 B., 594; 13 B., 641; 2 Hill, 293; 1 Den., 69.)

CHURCH, Ch. J. The service of the notices by Patterson, taking possession of the premises, and the acts and declarations of the parties at the time clearly evince an intention on his part to declare the contract thenceforth at an end, and the payments made thereon forfeited for the default of the purchasers in making payment according to its terms. It is clear, also, that Anthony Furness, 2d, in his own behalf, refused to perform the contract and intended to abandon it; that he and the widow of Thomas Furness, as administrators, were unable, for the want of personal assets, to make the payments, and that they acquiesced in the forfeiture and intended to abandon the contract and all claim under the same.

The referee and the Supreme Court were therefore manifestly right in holding, first, as to Anthony Furness, 2d, that he had no claim either for a specific performance or for compensation; and second, in the language of the learned judge who delivered the opinion in the court below, that "the heirs could not well have a specific performance of the contract against Patterson for reasons too obvious to require comment." Time is not generally deemed in equity of the essence of the contract unless the parties have expressly so treated it, or it necessarily follows from the nature and circumstances of the contract. (Story's Eq. Jur., § 776.) But time may be made of the essence of the contract by express stipulation or necessary implication, or by subsequent notice insisting upon the contract being completed within a reasonable time. (Id. note 1, Dart. on Vendors, 211, and cases there cited.)

Not only was the notice given in this case to Anthony Furness, 2d, one of the purchasers, and to the administrators of Thomas Furness, who were in possession, but the vendor evinced a willingness to perform the contract on his part, and a desire to have it performed on the part of the purchasers. The evidence shows, on the part of the vendor, the utmost fairness and regard for the rights and interests of the other parties; and it was not until the latter had refused to perform the contract, and substantially expressed the intention to abandon it, that he availed himself of his legal right to terminate it and resume possession of the premises. He occupied the premises about eight years, made valuable improvements thereon without any claim or molestation from any source. It is now insisted that the heirs of Thomas Furness, while they have no right to a specific performance of the contract, are entitled to compensation for the reason that, upon his death, his interest in the land under the contract descended to them as real estate; that the administrators could do no act to divest them of their title, and that, being infants, they could neither be prejudiced by the acts of Patterson or the administrators, nor by lapse of time. It is true that the interest, which Thomas Furness had in the land at his death, was an interest in real estate and descended to his heirs. He was the equitable owner of the land in common with his co-purchaser, subject, however, to the terms and conditions of the contract. (*Champlain* v. *Brown*, 6 J. Ch., 398; Dart on Vendors, 114, and cases cited.) Upon his death his heirs took his interest by descent, subject to the same conditions. (Id.)

The rights of the vendor were not affected by the death of one of the purchasers. It was as lawful for him to enforce the contract; to demand its performance, and to insist upon a forfeiture for non-performance after as before that event took place. It is claimed, however, that the heirs should have had notice, or that judicial proceedings should have been instituted to foreclose their rights, and this presents the material question in the case. The answer to it is obvious.

Although the equitable title under the contract was held by the purchasers as tenants in common, yet the contract itself was single. As to the vendor, the purchasers were one party, and a notice to one being in possession, and a refusal by him to perform in the absence of collusion or bad faith, was sufficient, and affected the rights of the purchasers and the vendor under the contract, and to the same extent as though both had been served. This principle was expressly recognized by this court in the case of *Carman* v. *Pultz* (21 N. Y., 547). The purchasers in that case were put in default by the tender of a deed to one and his refusal to accept and perform the contract. SELDEN, J., said: "Either of the vendees, therefore, being authorized to accept performance on the other part, and bound to complete performance on their own upon receiving a tender of a conveyance, would be under obligation to accept it and make the corresponding payment, and his neglect or refusal to do so would be a clear breach of the contract on the part of such vendees." It is not perceived that the death of one of the purchasers makes any difference in the application of this principle, because his heirs occupied his position and had no other rights than such as he possessed. Another answer to the plaintiff's position is, that the service of notice upon the administrators being in possession and representing the means of paying the purchase-money was sufficient. (*Brinkerhoff* v. *Olp*, 35 Barb., 27.) It was their duty to have performed the contract by making payment, if they had personal assets sufficient for that purpose, and if it was for the interest of the heirs to have done so. If the heirs have suffered by the wrongful neglect of the administrators to make payment the latter are liable for the injury. There were no personal assets in fact, and the administrators did not deem it for the interest of the heirs to resort to a sale of other real estate for that purpose. (See 6 J. Ch. R., 398.) There is still another principle worthy of consideration. There are cases where infancy will not excuse the non-performance of conditions and the non-assertion of rights. It is claimed that the heirs

held the equitable title, but it was a title defeasible by the neglect of themselves or those who represented them to perform a condition subsequent. In relation to conditions annexed to an estate made either to his ancestor or himself, the laches of an infant will bar him of the right of the land forever. (Bingham on Infancy, 99 ; Chambers on Infancy, 416 to 421.) In *Griffin* v. *Griffin* (1 Scholes, & Lefroy, 352), Lord Chancellor REDESDALE lays down the general rule "that in executory agreements, an infant cannot take advantage of his infancy to excuse the non-assertion of a right, where an immediate assertion of his right and a performance of his part of the contract is essential to the interest of the other party." In the case before us, the vendor was not in fault. The act of taking possession was a significant notice of his rights and of the character of his claim, and placed him in a position where delay in the assertion of a hostile claim would materially affect his interest. The co-purchaser and the administrators, both of whom in some sense represented the heirs as to this contract consented to the abandonment of it, and the heirs themselves neglected for a period of eight years any assertion of right or claim under it. After these acts and delays, they come into court having no claim for a specific performance of the contract for reasons "too obvious to require comment," and demand compensation in damages. There is no principle of law or equity which will sustain such a claim, and I have been unable to find any authority to favor it. It would sanction the doctrine of allowing a party to recover back money paid upon an executory agreement which he had neglected and refused to perform on his part. This is never permitted either in law or in equity. (*Ketcham* v. *Evertson*, 13 J. R., 365 ; *Battle* v. *Rochester City Bank*, 3 Cow., 88 ; *Haynes* v. *Hart*, 42 Barb., 58 ; *Lawrence* v. *Simons*, 4 Barb., 354.)

The views above expressed render it unnecessary to determine the other questions presented. The judgment must be reversed and a new trial ordered, costs to abide the event.

All the judges concurring in reversal.

Judgment reversed and new trial ordered.