MILLER ET AL. *v.* FLETCHER SAVINGS AND TRUST
COMPANY ET AL.

[No. 11,025. Filed December 2, 1921. Rehearing denied April 7,
1922.]

1. PRINCIPAL AND AGENT.—*Personal Contracts of Agent.—Liability of Principal.*—A vendor of realty is not bound by an agreement pertaining to the improvement of the realty which was made by his agents after the sale contracts were executed, and which was made in the individual capacity of the agents and was without consideration, so that it was not error to strike out an allegation of such agreement from purchaser's cross-complaint in the vendor's action to quiet title. p. 190.

2. EVIDENCE. — *Parol Evidence. — Contracts. — Previous Oral Agreements.—Merger.*—A contemporaneous oral agreement by the vendor's agent concerning the maintenance of certain electric lights was merged in the written contract of sale, so that an averment of such oral agreement was properly stricken out of the purchaser's cross-complaint in the vendor's action to quiet title, where there was no allegation that the oral agreement was omitted from the written contract by fraud or mistake, or that the written contract did not contain all of the agreement between the parties. p. 191.

3. APPEAL.—*Review.—Harmless Error.—Striking Out Part of Pleading.—Subsequent Adjudication.*—Error, if any, in striking from cross-complaint an allegation that the vendor of realty charged to the purchaser the amount of certain taxes which the vendor had agreed to pay, was harmless to the purchaser, where the trial court heard evidence and made its finding as to liability for the payment of such taxes. p. 191.

4. APPEAL.—*Review.—Harmless Error.—Striking Out Part of Pleading.*—The striking from a cross-complaint of an allegation of a conclusion that defendant became bound to repay plaintiff a specified sum was not prejudicial to defendant, where such allegation followed the averment of facts on which the conclusion was based, and the question as to such repayment was fully covered by the court's findings and conclusions. p. 191.

5. VENDOR AND PURCHASER.—*Contract of Sale.—Rescission.—Resale by Vendor.*—In an action by a vendor to quiet title to land after rescission of the contract of sale because of the vendee's default in payment, an averment in defendant vendee's cross-complaint, seeking recovery of money paid by him, that vendor had thereafter sold the land involved to another for a stated sum was immaterial, since the vendor having the right to rescind, had the right to sell again to the best advantage. p. 192.

6.  APPEAL.—*Briefs.*—*Questions Presented.*—In an action to quiet title to land against a contract of sale rescinded for defendant's default in payment, defendant's brief stating that the payments under the contract were discontinued by him because plaintiff disregarded its covenants as therein before set out, but which did not, in its concise statement, set out the substance of the allegations of breach by plaintiff which were stricken from defendant's cross-complaint, fails to show that the discontinuance of the payments was caused by plaintiff's breach in the matters set out in the stricken allegations. p. 192.

7.  VENDOR AND PURCHASER.—*Contract of Sale of Land.*—*Purchaser's Default in Payment.*—*Recovery of Installments Paid.* —Where a contract for the sale of realty expressly stipulated that, in the event of purchaser's default in paying further installments, the installments already paid should be forfeited to the vendor as rental for the realty and as liquidated damages for breach of the contract, the purchaser cannot, after default in paying subsequent installments, recover those already paid. p. 192.

8.  QUIETING TITLE.—*Quieting Title Against Contract Illegally Recorded.*—*Demand for Cancellation.*—A vendor of realty was not required, before bringing an action to quiet title against a contract of sale recorded by the purchaser, to demand a cancellation of record of the contract, where the contract had never been acknowledged by the vendor, as required by statute, and hence was recorded without authority of law. p. 195.

9.  VENDOR AND PURCHASER.—*Contract of Sale of Realty.*—*Rescission.*—*Vendee's Acquiescence.*—*Effect.*—Where the vendor of realty gave notice, in the manner stipulated by the contract of sale, of rescission of the contract because of the purchaser's default in paying installments in accordance with the terms thereof, the acceptance of such rescission by the purchaser and delivery of possession to the vendor did not make the rescission one by mutual consent. p. 195.

10.  DAMAGES.—*Contract of Sale of Realty.*—*Breach.*—*Liquidated Damages.*—The rule that, where the amount to be paid as liquidated damages in the event of forfeiture is disproportionate to the actual damages suffered, it will be construed as a penalty, has no application to a provision in a contract for the sale of realty on installments that in event of default by the purchaser the installments already paid may be retained as liquidated damages, and the defaulting purchaser cannot recover payments made on the contract. p. 196.

From Marion Circuit Court (31,959) ; *Louis B. Ewbank,* Judge.

Action by the Fletcher Savings and Trust Company and others against Lewis G. Miller and others. From a judgment for plaintiffs, the defendants appeal. *Affirmed.*

*S. Mahlon Unger,* for appellants.

*Joseph & Abrams,* for appellees.

NICHOLS, P. J.—Action by appellees against appellant to quiet title to four lots in Indianapolis, with an amended second paragraph of complaint by which appellees sought to have certain contracts of sale canceled of record in the recorder's office of Marion county, Indiana.

Appellant Lewis G. Miller, hereinafter mentioned as appellant, filed five paragraphs of cross-complaint claiming an interest in the lots and seeking a return of the purchase-money paid before his default and abandonment.

On motion of appellees certain parts of these paragraphs of cross-complaint were stricken out and upon this ruling of the court as hereinafter appears, appellant predicates error.

Appellant Alice A. Miller filed an answer of disclaimer and is therefore not further considered in this appeal.

The cause was put at issue by general denials to the amended second paragraph of complaint and to the cross-complaint. There was a trial by the court with a special finding of facts, the substance of which, so far as here involved, is as follows:

Appellee Sanborn was on May 4, 1915, the owner in fee simple of the real estate here involved which real estate, on said day he, his wife, Grace A. Sanborn, joining, conveyed by a trust deed unto appellee company with full power of sale in it as such trustee. Thereafter, pursuant to the powers vested in it, said trustee, on July 19, 1915, contracted with appellant for the sale by it to

him, of the said real estate, which contracts, four in number, one for each of said tracts, were in writing, of the same terms, tenor, and effect, and by each of which it was agreed in substance, so far as here involved that appellant should pay for each tract of said real estate the sum of $2,250, $25 down, then $25 per month in advance until all of the purchase price had been paid. All deferred payments to bear six per cent. interest computed semi-annually on the balance of the purchase price. The trustee was to pay all taxes against said real estate due and payable on or before January 1, 1917, and appellant should pay all taxes and public assessments, if any, thereafter. It was agreed that if any tax or public improvement assessment be not paid when due, or any payment on the purchase price should become more than thirty days delinquent, the trustee might at its option, either declare the entire balance of the purchase price due and collectible, or it might rescind the contract to sell and convey said real estate and take possession thereof; and in the event of said rescission all payments already made by the purchaser should be taken and retained by the trustee, not as penalty, but as rent for said lot, and as liquidated damages for breach of the contract. Failure or delay to exercise such option, should not be nor operate as a waiver of the right to exercise such option at any time thereafter. It was agreed that a letter addressed by United States mail to the purchaser at 2260 N. Pennsylvania street should be sufficient notice of the exercise of this option. It was agreed that such sale contract should not be sold, assigned or transferred before the lot was fully paid for, or had been deeded to the purchaser, without the written consent of the trustee; and in the event of any attempted sale, assignment or transfer without such written consent, the trustee should have the right to

exercise the option as above set out. None of said contracts was acknowledged by the trustee at any time but said contracts were acknowledged by appellant April 27, 1918, for himself alone, and all of said contracts were placed of record on April 27, 1918, in the mortgage records of the recorder's office of Marion county. Said contracts were delivered July 19, 1915, and appellant took possession of said real estate and made payments of installments on the purchase price thereof, upon each of said contracts, a total of $650, being $2,600 upon the four of said contracts, as follows:

On each contract in 1915: July 20, $25; Aug. 19, $25; Sept. 20, $25; Oct. 19, $25; Nov. 19, $25; Dec. 17, $25. In 1916: Jan. 19, $25; Jan. 21, $75; May 1, $50; July 8, $25; July 25, $25; Oct. 17, $25; Dec. 30, $75. In 1917: Apr. 16, $100; May 19, $25; June 21, $25; July 23, $25; Nov. 24, $25; which sums were accepted by said trustee upon said contracts as payments of installments on the purchase price of said real estate. At no time since November 24, 1917, has appellant paid or offered to pay any money to appellees or either of them or to anybody on said contract of purchase. Appellant was more than thirty days delinquent upon payments as follows: ' Oct. 19, 1916, forty-two days over the thirty days delinquency; Nov. 19, 1916, eleven days over the thirty days delinquency; Jan. 19, 1917, fifty-seven days over the thirty days delinquency; Feb. 19, 1917, twenty-six days over the thirty days delinquency; Aug. 19, 1917, sixty-seven days over the thirty days delinquency; Sept. 19, 1917, thirty-six days over the thirty days delinquency; Oct. 19, 1917, six days over the thirty days delinquency; which payments made as above stated, were received by said trustee, in each separate instance upon each contract, after they had become delinquent said number of days over the thirty days permitted by the

contracts. Said sums of money as above recited are all that were ever paid on the purchase price of said lands under said contract.

February 16, 1918, appellant was in arrears in his payments on each of said contracts in the sum of $125, and on said date the trustee sent a letter to him by the terms whereof said trustee gave notice that it rescinded said contracts on account of the delinquency in payments, and that said trustee would no longer be bound by said contracts, which letter was received by appellant on or about said day, whereby said trustee rescinded said contracts and took possession of said lots at the time, which rescission was accepted by appellant prior to the commencement of his cross-action herein, and who delivered possession of said real estate to said trustee. Prior to the commencement of his cross-action herein, appellant demanded of each of appellees the repayment of said money he had paid on said contracts, to wit: $2,600, but each refused payment of said sum or any part thereof, and no part thereof has been repaid or tendered. On said February 16, 1918, appellant was delinquent 120 days in his payments in excess of the thirty days delinquency authorized by the sale contract. Before the commencement of this action said trustee sold and conveyed one of said lots to Harold E. Egan, and thereafter, in order to release the said lot from the contract in regard thereto, appellant executed to said Egan a quitclaim deed to said lot in consideration of the payment by said Egan of the sum of $80 but same was done without prejudice to any of the rights of appellant against appellees under said contracts for the recovery of any sum he might deem himself entitled to against them or either of them.

On December 29, 1917, appellant executed an assignment of all of said contracts to his daughter Alice A. Miller, who in this action has disclaimed any and all

interest in said real estate. Said daughter thereafter on said day reassigned said contracts to appellant which assignments and reassignments were made without any considerations whatsoever, but were made in the expectation that said daughter might be able to put said contracts into a real estate transaction she was about to make, but that they were not so put into said transaction, and were never disposed of. Said trustee had no knowledge until after March, 1918, of the assignment and reassignment of said contract as aforesaid, and not until the said assignments and reassignments were recorded by appellant. The daughter is not elsewhere mentioned. The existence of the record of said contracts operates to make it more difficult for the trustee to sell said lots to purchasers on the open market. The damages to said trustee, if there be any damages by reason of the failure and refusal of appellant to complete the performance of said contracts for the purchase of said real estate do not exceed the sum of one cent unless said trustee is entitled to retain the payments made by appellant as and for liquidated damages for the breach of said contracts and as rent for the use of said real estate, which liquidated damages and reasonable rent for said real estate for the time that they were in possession of said Miller, if said stipulations in the contracts are binding, amounts to $2,600. Said real estate is and at all times has been unimproved and has produced no rental income. Said contracts and assignments have never been acknowledged by the said trustee, but they have been acknowledged by appellant for the purpose of having them recorded. On each of said tracts of real estate taxes accrued and were paid by the trustee as follows: May 1, 1917, $8.16; Nov. 1, 1917, $7.32, being 1916 taxes; May 1, 1918, $7.85 Nov. 1, 1918, $7.30, being 1917 taxes; May 1, 1919, $7.32; Nov. 1, 1919, $7.32, being 1918 taxes; May 1,

1920, $. . . ., being first half of 1919 taxes. Appellant objected to the trust company charging his account with the taxes paid May 1, and November 1, 1917, amounting to $15.48, but that said trust company so entered such a charge against him on its books. Appellant is claiming no interest in the lot conveyed to Egan. He is claiming an interest in the rest of said real estate by virtue of his demand for the return to him of the money paid by him on said contracts so rescinded by appellee trustee, under a claim of a vendee's lien for the repayment of the sum so paid by him upon said contracts, with interest at six per cent. from February 16, 1918. Said interest so claimed by appellant is adverse to appellee's claim and title to said real estate, if appellees are entitled to said real estate, free and clear of any claims of appellant based upon said contracts.

On these facts the court states its conclusions of law that: (1) Appellees are entitled to have the instrument which has been recorded in the recorder's office of Marion county, canceled; (2) appellant Lewis Miller is not entitled to recover anything as against appellees or either of them upon his cross-complaint; (3) appellees are entitled to recover from Lewis G. Miller appellant their costs; (4) appellees are entitled to quiet their title as against appellants to the real estate described in their complaint.

Appellant complains that the court erred respectively in striking out certain parts of his cross-complaints.

The first error specified pertains to striking out

1. an agreement to fill and level the lots by the time appellant built a house thereon, signed by appellee's agents, not as such, but in their individual capacity, and not with any showing or pretense that they were acting with the authority of appellees, which agreement was made after the sale contracts, and was with-

out consideration.   It is averred that appellees repudiated this agreement but certainly they were not bound thereby.

The second error specified pertains to striking out an oral agreement which it is alleged said agent made concerning the maintenance of certain electric lights which were thereafter discontinued.  Such oral representation or promise, even if made with authority of appellee, was contemporaneous with the written agreement and hence was merged therein. There is no averment that such oral agreement was omitted from the written agreement by fraud or mistake, or that the written agreement did not contain all of the agreement between the parties.   Without such averment, the oral agreement was properly stricken out. *Buffalo, etc., Quarries Co.* v. *Davis* (1909), 45 Ind. App. 116, 90 N. E. 327; *Hardin* v. *Sweeney* (1913), 54 Ind. App. 614, 103 N. E. 115.

The third error specified pertains to striking out an averment as to the payment of the 1916 taxes which appellant contends the trustee agreed to pay, but that having done so, it charged the same to appellant's account.   Appellee trustee had paid this item of tax and it became a matter of adjustment in the final settlement of the account.   Further, the court heard evidence and made its finding as to this matter, and appellant was therefore not harmed by the court's ruling in striking out the averment.

The fourth error specified is that the court erred in sustaining appellees' motion to strike out the following averment from the cross-complaint:   "Said trustee became bound to repay this defendant said sum of $650 (on each contract or $2,600 on the four) so paid by him upon said agreement."   This averment followed the averments of the facts, and is but the pleader's conclusion.   It was not reversible error to

strike it out.   The court's findings and conclusions fully cover this question.

The fifth error specified is that the court erred in striking appellant's averment from the complaint to the effect that appellee had sold the lots involved for 5. $2,500.   This was not error.   If appellees had a right to rescind, certainly thereafter they had a right to sell to the best advantage.

Furthermore it does not appear from appellant's brief that he discontinued the payments on said contracts because of the alleged misconduct of the 6. trustee in disregarding its alleged covenants, the allegations of which were stricken out.   He sets out in his brief what purports to be a concise statement of each of the four paragraphs of cross-complaint in which he says:   "That by reason of the conduct of said trustee in so disregarding its covenants as hereinbefore set out, the defendant or appellant discontinued the payments on said contract."   But in such concise statement of the paragraphs of cross-complaint, the foregoing parts the striking out of which appellant complains of as error, are not found.

Appellant challenges the conclusions of law, and each of them, and contends that notwithstanding the express stipulation of the contract to the contrary, the 7. money paid upon the contracts in installments cannot be held to be liquidated damages, but must be held to be a penalty.   But this contention is not in harmony with the well established principle of law as stated in *Kelly* v. *Thompson* (1869), 101 Mass. 291, 298, 3 Am. Rep. 353, as follows:   "When a purchaser expressly stipulates that a payment on account, actually made by him, is to be forfeited if by his own default the purchase shall not go into effect, he may reasonably be understood to mean that it shall not be reclaimed in whole or in part.   The distinction between a penalty

and liquidated damages does not apply to a case of that description." This statement of the law is quoted with approval in the case of *Donahue* v. *Parkman* (1894), 161 Mass. 412, 37 N. E. 205, 42 Am. St. 415. The rule is stated in 39 Cyc 2025, as follows: "Where the purchaser without cause refuses to perform his contract, or is in default in making payments thereunder, he is in no position to recover the installment or installments which he has already paid; accordingly in such a case, if the vendor is in no default, no recovery can be had; and especially is this true where the contract itself provides that upon default of the purchaser he shall forfeit payments previously made by him, and that the same may be retained by the vendor."

Many authorities are cited to sustain the rule from only one of which we quote, it being the case of *Ketcham* v. *Everston* (1816), 13 Johns. (N. Y.) 358, 7 Am. Dec. 384, in which the court says: "It may be asserted, with confidence, that a party who has advanced money, or done an act in part performance of an agreement, and then stops short, and refuses to proceed to the ultimate conclusion of the agreement, the other party being ready and willing to proceed and fulfill all his stipulations, according to the contract, has never been suffered to recover what has been thus advanced, or done. * * * It would be an alarming doctrine, to hold, that the plaintiffs might violate the contract, and, because they choose to do so, make their own infraction of the agreement the basis of an action for money had and received. Every man who makes a bad bargain, and has advanced money upon it, would have the same right to recover back that the plaintiffs have. The defendant's subsequent sale of the land does not alter the case; · the plaintiffs have not only abandoned the possession, but have expressly refused to proceed, and renounced

the contract. To say that the subsequent sale of the land gives a right to the plaintiffs to recover back the money paid on the contract, would, in effect, be saying that the defendant could never sell it, without subjecting himself to an action by the plaintiff." Other authorities in point are: *Keefe* v. *Fairfield* (1903), 184 Mass. 334, 68 N. E. 342; *Bradford* v. *Parkhurst* (1892), 96 Cal. 102, 30 Pac. 1106, 31 Am. St. 189; *Glock* v. *Howard & Wilson Colony Co.* (1898), 123 Cal. 1, 55 Pac. 713, 43 L. R. A. 199, 69 Am. St. 17; *Hanschild* v. *Stafford* (1868), 25 Iowa 428; *Grimes* v. *Goud* (1887), (Me.) 10 Atl. 116; *Weymouth* v. *McLellan* (1837), 14 Me. 214; *Frost* v. *Frost* (1834), 11 Me. 235; *Rounds* v. *Baxter* (1827), 4 Me. (4 Greenl.) 454; *Davis* v. *Hall* (1879), 52 Md. 673; *Satterlee* v. *Cronkhite* (1897), 114 Mich. 634, 72 N. W. 616; *Patterson* v. *Murphy* (1894), 41 Neb. 818, 60 N. W. 1; *Hill* v. *Grosser* (1880), 59 N. H. 513; *Palmer* v. *Washington, etc., Investment Co.* (1906), 43 Wash. 451, 86 Pac. 640; *Jennings* v. *Dexter, Horton & Co.* (1906), 43 Wash. 301, 86 Pac. 576; *Maloy* v. *Muir* (1901), 62 Neb. 80, 86 N. W. 916; *Downey* v. *Riggs* (1897), 102 Iowa 88, 70 N. W. 1091; *Wheeler* v. *Mather* (1870), 56 Ill. 241, 8 Am. Rep. 683; *Beveridge* v. *West Side Construction Co.* (1909), 114 N. Y. Supp. 521, 130 App. Div. 139; *Havens* v. *Patterson* (1870), 43 N. Y. 218; *Lawrence* v. *Miller* (1881), 86 N. Y. 131; *Estate of Browning* (1853), 11 Tex. 237, 60 Am. Dec. 238; *Sanders* v. *Brock* (1911), 230 Pa. St. 609, 79 Atl. 772, 35 L. R. A. (N. S.) 532; *Hansbrough* v. *Peck* (1866), 72 U. S. (5 Wall.) 497, 18 L. Ed. 520. This is the rule in Indiana.

In the case of *Krisky* v. *Bryan* (1917), 63 Ind. App. 611, 115 N. E. 70, there was involved the sale of a town lot for $700, $250 cash, and the balance in monthly installments of $25 each. It was stipulated in the contract that should the payments remain unpaid for two

consecutive months, the contract should cease and determine, and that all moneys paid theretofore should be forfeited to the use of the seller as ascertained and liquidated damages. After paying the cash payment and ten of the installments, the purchaser defaulted. The seller was not at fault, and it was held that the defaulting purchaser could not recover the payments which he had made.

In *Glock* v. *Howard & Wilson Colony Co., supra,* a case involving the same question as here, it was held that if it be said that the clause for stipulated damages is void, still the vendor is entitled to retain the money.

Appellant contends that appellees were first required to make a demand upon appellant for the cancellation of record of the recorded contract, but this contention cannot prevail for the reason that the contract was never acknowledged by appellee trustee, the grantor, as required by statute, and hence it was recorded without authority of law, and had no place in the records of Marion county.

Appellant presents questions with reference to appellees' waiver of forfeiture and appellant's rights thereafter, but we do not need to discuss the questions for the reason that the contract is explicit as to appellees' right in these words: "Failure or delay to exercise this option (to rescind) shall not be nor operate as a waiver of the right to exercise such option at any time thereafter." The contract is equally specific as to the kind of notice of appellees' exercise of the option. This notice was given strictly in accordance with the terms of the contract, on February 16, 1918. This action was not commenced until December 11, 1919. In the meantime appellant made no tender of further payment, and made no demand for further rights under the contracts. It is expressly found that appellant accepted the rescission and delivered posses-

sion of the real estate to the trustee.    Such acceptance did not make the rescission mutual, one by agreement. The rescission, as expressly stated in the notice, was because of the delinquent condition of contracts, and the acceptance could not be more than an acquiescence therein, which under the conditions did not make it mutual.    Appellant avers in his cross-complaint that because of the alleged conduct of the trustee in disregarding the covenants of its contracts, he discontinued his payments, and he is not in this action offering to make payment and is not asking for an enforcement of the contract.    Under such circumstances appellant is not in position to complain that no demand was made upon him to pay up before rescission.

In reaching the conclusion that appellant, as a defaulting purchaser, cannot recover back the payments which he has made under the contracts of sale

10.    we are not unmindful of the distinction between "liquidated damages" and "penalty," and that where the amount to be paid in the event of forfeiture is disproportionate to the amount of actual damages suffered such amount so to be paid will be construed as a penalty.    This distinction, is clearly made in *Tudor* v. *Beath* (1921), 76 Ind. App. 526, 131 N. E. 848.    But such rule does not extend to cases where the purchaser after paying a part of the purchase price by installments, defaults in his further payments, and then undertakes to recover the payments so made.    Under such circumstances, the vendor not being at fault, the defaulting purchaser cannot recover.

The judgment is affirmed.