Pamela A. STUTEVILLE, Appellant
(Plaintiff Below),

v.

David DOWNING, and F. C. Tucker
Company, Inc., Appellee
(Defendant Below).

No. 1–179A3.

Court of Appeals of Indiana,
First District.

June 27, 1979.

Howard J. DeTrude, Jr., J. Randall Aikman, Gerald L. Lawlis, Kightlinger, Young, Gray & DeTrude, Indianapolis, for appellee.

ROBERTSON, Judge.

Plaintiff-appellant Pamela A. Stuteville (Stuteville) appeals a grant of summary judgment in favor of defendant-appellee F. C. Tucker Company, Inc. (Tucker).

The record reveals that Stuteville met socially a real estate agent, David Downing, in the spring or early summer of 1974. Downing was an employee of Tucker and was an acquaintance of Stuteville's boyfriend. Although the sequence and nature of events immediately after their social meeting is unclear, Downing negotiated with Stuteville for the sale of a condominium which was consummated in August of 1974. At the time of purchase, Downing indicated to Stuteville that if she became unsatisfied with the condominium within one year that he would buy it from her.

As Downing and his wife lived in the same complex, Stuteville continued to regularly visit socially with them. About ten months after the sale, however, Stuteville became interested in moving to South Carolina to accept employment as a nurse in a newly constructed hospital. She asked Downing what her options were with respect to the sale of the condominium and eventually Downing offered to purchase the same for $600 and to assume the existing mortgage thereon. As this was agreeable to Stuteville, she surrendered the premises to Downing and pursued employment in South Carolina. To make a long story short, Downing never paid the $600 nor assumed the outstanding mortgage and the condominium was eventually sold on foreclosure. This is an appeal from the ensuing lawsuit brought against Tucker and Downing, the latter not being a party to this appeal.

■ Ind. Rules of Procedure, Trial Rule 56(C) states that summary judgment is appropriate only when "there is no genuine issue as to any material fact and that

Timothy J. Kennedy, Sutherlin, Kennedy, Miller, Coons & Muller, Indianapolis, for appellant.

the moving party is entitled to a judgment as a matter of law." "A fact is material if it tends to facilitate resolution of any of the issues either for or against the party having the burden of persuasion on that issue." *Brandon v. State,* (1976) 264 Ind. 177, 180, 340 N.E.2d 756, 758. *See also Goethals v. DeVos,* (1977) Ind.App., 366 N.E.2d 673. "However, despite conflicting facts and inferences on some elements of a claim, summary judgment may be proper where there is no dispute or conflict regarding a fact that is dispositive of the litigation." *Hayes v. Second National Bank of Richmond,* (1978) Ind.App., 375 N.E.2d 647, 650 (citations omitted). *See also Letson v. Lowmaster,* (1976) Ind.App., 341 N.E.2d 785. In other words, a factual issue is "material" if it bears on the ultimate resolution of relevant issues, while a factual issue is "genuine" if it is not capable of being conclusively foreclosed by reference to undisputed facts. As stated in *Hahn v. Sargent,* 523 F.2d 461 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 54:

> The language of Rule 56(C) sets forth a bifurcated standard which the party opposing summary judgment must meet to defeat the motion. He must establish the existence of an issue of fact which is both 'genuine' and 'material'. A material issue is one which affects the outcome of the litigation. To be considered 'genuine' for Rule 56 purposes a material issue must be established by 'sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial.' *First National Bank of Arizona v. Cities Service Co., Inc.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).

*Id.,* at 464.

 The only preserved allegation of error is that a genuine issue of material fact exists as to whether Tucker was bound by Downing's actions on the basis of apparent authority. In *Burger Man, Inc. v. Jordan Paper Products, Inc.,* (1976) Ind.App., 352 N.E.2d 821, we declared:

> The apparent authority of an agent is that authority which a third person *reasonably believes the agent to possess* because of some manifestation from his principal. *Soft Water Utilities, Inc. v. LeFevre,* (1974) Ind.App., 308 N.E.2d 395; *Storm v. Marsischke,* (1973) Ind.App., 304 N.E.2d 840. These manifestations which the principal is required to make to the third person need not be in the form of direct communications, but rather the placing of the agent in a position to perform acts or make representations *which appear reasonable* to a third person is a sufficient manifestation to endow the agent with apparent authority.

*Id.,* at 832 (emphasis added).

> Apparent authority is the power to affect the legal relations of another person by transactions with third persons, professedly as agent for the other, *arising from and in accordance with the other's manifestations to such third persons.*

*Restatement 2d Agency,* § 8 (1958) (emphasis added).

At least insofar as relevant herein, therefore, a principal is bound by acts of his agent within his apparent authority so long as the third person's belief that the agent is so acting is reasonable, *i. e.,* within the ambit of the apparent authority bestowed upon the agent by his principal. This concept recognizes that a principal is not an insurer; rather, before the burden of a loss may properly be placed upon the shoulders of the principal, the third party must be able to articulate a reasonable basis for the belief that the principal would be bound by the acts of the agent. As a corollary to this rule, a principal is not responsible to a third person who dealt with the agent in his *personal* rather than his representative capacity. *See, e. g., Miller et al. v. Fletcher Savings and Trust Company et al.,* (1922) 78 Ind.App. 183, 133 N.E. 174.

 It is imperative to note initially that it is undisputed that Downing was acting as Tucker's agent when Stuteville *purchased* the condominium. It is also conceded, however, that the cause of action is *not* based on Downing's offer to repurchase at the

time of the original purchase—Stuteville testified and her counsel conceded in his reply brief that the alleged actionable wrong occurred when Stuteville purportedly *sold* the condominium to Downing on his oral promise to pay $600 and assume the outstanding mortgage. The crucial inquiry, therefore, is whether a genuine issue of fact exists with respect to Downing's apparent authority at the time of the purported sale to Downing. After our independent review of the record, we believe the following undisputed excerpts from Stuteville's deposition are controlling:

A. My leaving [for South Carolina] really depended on my selling the condominium, because obviously I could not afford to make mortgage payments and pay rent and not live here. I would not have left Indianapolis unless arrangements had been made for the selling of my condominium. So, at that time obviously I had no intention to go, because I had just not made any arrangements.

Q. When did you then plan definitely to go?

A. After David Downing told me he would personally buy the condominium from me and handle all the arrangements.

&ast; &ast; &ast; &ast; &ast; &ast;

Q. Miss Stuteville, would it be fair to say that at the time you left for South Carolina, in August of 1975, that you and the Downings were good friends?

A. Yes.

Q. And it was David Downing who agreed to buy the condominium from you in one year if you weren't satisfied with the arrangement; is that correct?

A. That is correct.

Q. He did not indicate to you that the F.C. Tucker Company would buy it from you a year in the future?

A. No.

Q. And then, possibly, a year later Mr. Downing did state that he would buy the condominium from you and he was speaking on behalf of Mr. Downing?

A. Yes.

Q. At that time you had no reason to believe that the F.C. Tucker Company was a party of that agreement, to purchase the condominium?

A. That is true.

Q. And later on when it became apparent that David Downing was not going to pay you the $600, you did feel that amount was owed to you by the F.C. Tucker Company?

A. No, I did not feel that.

Q. You did not feel that F.C. Tucker owed you the money?

A. No, I did not feel that F.C. Tucker owed me the money.

&ast; &ast; &ast; &ast; &ast; &ast;

It is clear to this court that Stuteville was dealing solely with Downing in his personal capacity. Nevertheless, Stuteville contends that Downing's agency status from the original purchase bled over into the subsequent "sale" to Downing, and that one reason why she trusted Downing was because he worked for a reputable real estate company. With respect to the former, the above testimony conclusively shows that his agency status did not bleed over since Stuteville was dealing with Downing in his personal capacity. With respect to the reputable aura bestowed upon Downing by his employer, we believe it is clearly insufficient to establish a *genuine* factual issue. To hold otherwise would be to treat Tucker as an insurer for the personal actions of its employees—we decline the invitation to bind a principal on the basis of apparent authority created solely by the good reputation of the employer.

■ Stuteville also contends a genuine issue of material fact exists as to whether Tucker ratified Downing's actions, or whether Tucker is liable on the basis of *respondeat superior*. These claimed errors have been waived, however, for Stuteville's failure to sufficiently specify such grounds in her motion to correct errors. *See La-Fary v. State Farm Mutual Automobile In-*

*surance Company,* (1975) Ind.App., 335 N.E.2d 242; *Ingmire v. Butts,* (1975) Ind. App., 334 N.E.2d 701.

Affirmed.

LOWDERMILK, P. J., and LYBROOK, J., concur.